THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ANDREW POINDEXTER *et al.* Plaintiffs in Error.

*Opinion filed December 22, 1909.*

1. CRIMINAL LAW—*defendant not entitled to bill of particulars as a matter of right.* It is only where the indictment does not sufficiently advise defendant what it is with which he is charged, or where it appears that he cannot properly prepare his defense without a bill of particulars, that it is the duty of the court to require one to be furnished.

2. SAME—*when bill of particulars is not necessary.* An indictment charging the defendants with conspiring together to obtain a specified sum of money from a named person by means of the confidence game sufficiently informs the defendants of the charge against them, where they have had only one transaction with the person named and previously had no acquaintance with him.

3. SAME—*when refusal to direct verdict on one count is harmless.* Refusal of the court to instruct the jury to find the defendants not guilty on one of the two counts of the indictment is harmless, where no evidence was offered which was not admissible under the other count, which is sufficient to sustain a conviction.

4. CONSPIRACY—*conspiracy to commit a felony is a violation of statute, regardless of intent.* A conspiracy to commit a felony, such as to obtain money by means of the confidence game, is a violation of section 46 of the Criminal Code, regardless of the intent of the parties, and an additional allegation charging that such conspiracy was entered into with intent to commit an act injurious to public trade may be rejected as surplusage and need not be proved. (*Maloney* v. *People*, 229 Ill. 593, distinguished.)

5. SAME—*a conspiracy in one State does not merge in a felony in another.* If a conspiracy to obtain money by means of the confidence game, which is a misdemeanor, is formed in Illinois and some steps are taken in Illinois towards its completion, the fact the object of the conspiracy, which is a felony, is consummated in another State does not merge the conspiracy in the felony.

6. CONFIDENCE GAME—*what is a confidence game.* Any swindling scheme whereby a swindler wins the confidence of his victim and swindles him out of his money by taking advantage of such confidence is a confidence game.

7. INSTRUCTIONS—*when instruction upon subject of conspiracy is not misleading.* An instruction stating that "all who take part in a conspiracy after it is formed and while it is in execution, and all who, with the knowledge of the facts, concur in the plans originally formed and aid in executing them, are fellow-conspirators. Their concurrence, without proof of any agreement to concur, is conclusive against them," etc., does not convey the idea that concurrence of an innocent man, having no knowledge of the facts, would be conclusive against him.

8. SAME—*when failure of instruction to state period of limitation is harmless.* An instruction stating that it is not necessary to prove the commission of the offense at the time alleged if it is shown that the offense was committed within the period set by the Statute of Limitations should state what such period is, but an omission in that respect is harmless where the whole transaction involved occurred less than three months before the indictment was found.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Criminal Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

G. H. SUGRUE, and E. J. RABER, for plaintiffs in error.

W. H. STEAD, Attorney General, and JOHN E. W. WAYMAN, State's Attorney, (J. E. NORTHUP, of counsel,) for the People.

Mr. JUSTICE DUNN delivered the opinion of the court:

The plaintiffs in error were indicted in the criminal court of Cook county, together with one Alex. W. Maas, who was not arrested, for conspiracy. Upon a trial they

were convicted and the Appellate Court affirmed the conviction.

The first error relied on for reversal is, that the trial court refused to require the People to furnish an additional bill of particulars. The indictment consisted of two counts, the first of which charged that the defendants conspired together to obtain from Frank L. Susemihl $3000 by means of false pretenses, and the second that they conspired together to obtain $3000, the property of Frank L. Susemihl, by means of the confidence game. The court, on the motion of plaintiffs in error, required the prosecution to file a bill of particulars, which was done. The bill stated that the People would offer evidence to prove that the defendants conspired together to obtain $3000 in money by means of the confidence game, the particulars of which were more fully set out in the indictment. If the plaintiffs in error were entitled to a bill of particulars this one was of no advantage to them, for it furnished no information not contained in the indictment. But a defendant is not entitled to a bill of particulars as a matter of right. The requiring of it rests in the sound discretion of the court. It is only where the indictment does not sufficiently advise the defendant what it is with which he is charged, or where it appears that he cannot properly prepare his defense without a bill of particulars, that the court will require one to be furnished. (*Gallagher* v. *People,* 211 Ill. 158; *DuBois* v. *People,* 200 id. 157; *Kelly* v. *People,* 192 id. 119.) In this case the fact that the defendants were charged with conspiracy to obtain the money of Frank L. Susemihl fully informed the plaintiffs in error of every fact connected with the transaction. The evidence shows that Susemihl had but one transaction with defendants and prior thereto had no acquaintance with any of them. The transaction covered only three or four days and culminated on June 22, 1907. Bush was arrested on August 2 and Poindexter on August 30, and they were tried on September 27. There

is no just pretense that a bill of particulars was necessary to enable the plaintiffs in error to prepare their defense, or that they were forced to trial without knowledge of the precise facts constituting the case against them and of the time and place of their occurrence.

The court refused the request of plaintiffs in error to instruct the jury to find them not guilty on the first count of the indictment. They insist that the bill of particulars limited the proof to the second count of the indictment, since it alone charged that the conspiracy was to obtain money by means of the confidence game. If it be conceded that this was the effect of the bill of particulars the plaintiffs in error were not injured, because no evidence was offered which was not admissible under the second count, and the evidence is sufficient to sustain the conviction on that count.

It is contended that the court should have instructed the jury to find the defendants not guilty on the second count of the indictment because that count charges a conspiracy to do an illegal act injurious to public trade, whereas the proposed illegal act charged was to obtain money by means of the confidence game, which is not an act injurious to public trade. The second count, after the formal part, charges that defendants "unlawfully, feloniously, fraudulently and maliciously, with the fraudulent intent to wrongfully and wickedly do an illegal act then and there injurious to public trade, did conspire, confederate and agree together with each other to then and there wrongfully, maliciously, designedly and unlawfully obtain a large amount of personal goods, funds, money and property, to-wit, (stating money denominations,) of the value of $3000, the personal goods, funds, money and property of the said Frank L. Susemihl, by means and by use of the confidence game, contrary to the statute and against the peace and dignity of the same People of the State of Illinois."

The case of *Maloney* v. *People,* 229 Ill. 593, is cited as sustaining the position of the plaintiffs in error. That case was an indictment under section 46 of the Criminal Code for a conspiracy to do an illegal act injurious to public morals by threatening to accuse the prosecuting witness of the infamous crime against nature, with the intent to extort money from him. It was held that the clause charging the particular act committed and the clause alleging the act to be injurious to the public morals were both material and entered into the substance of the description of the offense; that neither could be rejected, and because of their inconsistency the indictment was void. Section 46 is directed against conspiracies of different kinds. One kind is a conspiracy to commit a felony of any kind, and such conspiracy is punishable in any event. Another kind is a conspiracy to do an illegal act injurious to the public health, morals, police or the administration of public justice, and such a conspiracy is punishable under this section only when the illegal act is of such a character that it appears to be injurious to the public trade, health, morals, police or the administration of public justice. The distinction is noticed in the *Maloney case.* The indictment here charges a conspiracy to commit a felony, viz., to obtain money by means of the confidence game. It is charged that the conspiracy was entered into with intent to commit an illegal act injurious to public trade, but such allegation may be rejected as surplusage. The intent is no part of the description of the offense. A conspiracy to commit a felony is a violation of the statute, regardless of the intent. The only thing which it was charged that the conspirators proposed to do was to commit a felony by obtaining money by means of the confidence game. The charge of a conspiracy for that purpose was complete, and no charge as to the intent of the conspirators could make it better or worse in law. The intent was in no sense descriptive of the conspiracy and was not required to be proved.

It is claimed the evidence does not sustain the verdict. The scheme used by the plaintiffs in error was a mere modification of the gold brick swindle. The case was submitted on the evidence of the prosecution, the defendants offering no testimony. Susemihl had advertised in the *Chicago Tribune* that he had money to loan. Poindexter called him by telephone and later came to his house. He told Susemihl that his name was John Bailey, and that his sister had answered Susemihl's advertisement but that she had secured a loan elsewhere. He had come to see Susemihl about another proposition which he got from Denver in the interest of his brother, who was employed by the Elizabeth Gold and Silver Mining Company in the Nevada district as a telegrapher and was a secretary to the officers of the company. He produced telegrams from his brother and a letter written on the letter-head of the mining company, and he said that the company had made great developments and discovered very rich ore and this would send the stock away above par, which was one dollar per share. The officers intended to send money to different brokers to buy the stock as low as possible so as to make as much as they could out of it. His brother had told him of certain persons who were connected with the mine in early days and had large blocks of stock. One was Alexander Maas, of East Chicago, who held about 25,000 shares. He had been to see Maas but could not do much with him, and suggested that Susemihl figure out some way to approach him without arousing his suspicions. Poindexter and Susemihl agreed that the profits to be made out of the transfer of the stock should be divided between Susemihl, Poindexter and the latter's brother. Poindexter said that he knew a broker in Chicago on the stock exchange to whom some of the money had been sent, and suggested that Susemihl go to the stock exchange and meet him and have a talk with him. Susemihl went with Poindexter, whom he knew only as Bailey, to the stock exchange, where he met the plaintiff

in error Bush. Poindexter introduced Bush as McDonald, and the latter represented himself to be a reputable dealer on the stock exchange and that he did business at the Metropolitan Trust and Savings Bank. In fact, he was not a member of the exchange or customer of the bank. He said that he was in a position to pay about forty cents a share for the stock. Poindexter and Susemihl then went to East Chicago and saw Maas, who was willing to take $5000 for 25,000 shares of the stock which he had. Poindexter and Susemihl then returned and told Bush they thought they could purchase about 25,000 shares, and he then agreed to pay fifty cents a share for that number of shares. Susemihl tried to induce Maas to accept his note or let him deposit the money in the bank or in the hands of some person Maas knew until Susemihl could take the certificates to Bush and have him examine them, but Maas refused, giving as a reason that he had failed and gone through bankruptcy and his creditors had been watching him ever since to seize whatever he had of value. Bush refused on his part to make any deposit or deal in any way except to pay cash on the delivery of the certificates. Finally, Susemihl went to East Chicago on June 22, 1907, paid Maas $3000 and gave him his note for $2000 and obtained the certificates. Bush was to meet Susemihl at the Victoria Hotel that night to receive and pay for the stock. He came to the hotel but without the money, saying he did not want to carry so much money at night, but that he would meet Susemihl and pay him Monday morning. Poindexter was also to meet Susemihl and receive his share of the profits. After his separation from Bush at the Victoria Hotel Susemihl did not see either Bush or Poindexter until after their arrest, and since Maas was not arrested he has not yet seen him. Susemihl still has the certificates of stock and has been unable to find a market for them.

Any scheme whereby a swindler wins the confidence of his victim and swindles him out of his money by taking

advantage of such confidence is a confidence game. These three defendants, apparently strangers, co-operating under false names, so won the confidence of Susemihl that, relying upon the statement that the mining company had placed in Bush's hands money to buy this stock and that Bush was a reputable member of the stock exchange and customer of the Metropolitan Trust and Savings Bank and had the money ready to pay for it, he parted with $3000 of his money. No sooner had he done so than all three disappeared, the one who was to take the stock, without paying for it, as he had agreed, and the one who was to divide the profits, without calling for his share. Under these circumstances it is a fair inference that the whole of Poindexter's and of Bush's statements were false and the mining company itself a figment of their imagination.

It is objected that Susemihl was permitted to testify, over objection, that he offered the stock for sale and was unable to sell it at any price. His testimony in this regard did the plaintiffs in error no harm. Without it the jury could have come to no other conclusion than that the stock was worthless.

The fifteenth instruction given on behalf of the State is as follows:

"The court instructs the jury, as a matter of law, that all who take part in a conspiracy after it is formed and while it is in execution, and all who, with the knowledge of the facts, concur in the facts originally formed and aid in executing them, are fellow-conspirators. Their concurrence, without proof of an agreement to concur, is conclusive against them. They commit the offense when they become partners to the transaction or further the original plan."

Objection is made to it because it is said that by its terms the concurrence of the defendants in anything that might have taken place would be conclusive proof against them as to their guilt; that an innocent man might have

concurred without knowing that he was concurring, and the mere proof of this fact would be conclusive against him. The instruction is incapable of this meaning. The pronoun "their," in the second sentence, refers back to the "fellow-conspirators" of the preceding sentence. The fellow-conspirators are "all who take part in the conspiracy after it is formed and while it is in execution, and all who, with the knowledge of the facts, concur in the facts originally formed and aid in executing them." "All who take part in a conspiracy and all who with knowledge concur" excludes any who concur without knowledge, as the jury could not fail to understand.

The thirteenth instruction told the jury that it is not necessary to prove the commission of the offense at the time alleged in the indictment, but that it is sufficient to prove its commission before the date of the indictment and within the period set by the Statute of Limitations. The instruction was defective in not telling the jury the period of limitation fixed by the statute, but as the whole transaction occurred less than three months before the finding of the indictment the instruction did no harm.

It is urged that if the proof shows a conspiracy, which is a misdemeanor, it also shows that the object of the conspiracy, which was the commission of a felony, was carried out, and that therefore the misdemeanor merged in the felony. The conspiracy was formed in Illinois and some action towards its completion was taken in this State. The consummation of its purpose was in Indiana. A conspiracy in one State or country does not merge in a felony committed in another.

There is no error in the record for which the judgment should be reversed, and it is affirmed.

*Judgment affirmed.*