(No. 11592.—Judgment reversed.)

THE INTERNATIONAL HARVESTER COMPANY OF NEW JERSEY, Plaintiff in Error, *vs.* THE INDUSTRIAL BOARD OF ILLINOIS *et al.*—(JAMES F. BISHOP, Admr., Defendant in Error.)

*Opinion filed February 20, 1918.*

1. APPEALS AND ERRORS—*assignment of error is waived when not argued in briefs.* Where an assignment of error is not argued in the briefs filed in the Supreme Court it is deemed waived.

2. WORKMEN'S· COMPENSATION—*when an injury occurs within the course of an employment.* An injury occurs in the course of an employment, within the meaning of the Workmen's Compensation act, when it occurs within the period of the employment at a place where the employee may reasonably be and while he is reasonably fulfilling the duties of the employment or is engaged in something incidental to it.

3. SAME—*legal conclusions of Industrial Board are subject to review by Supreme Court.* While the Industrial Board's findings of fact are conclusive on the Supreme Court, the legal conclusions of that board, based upon such findings, are subject to review, and if it is clear that as a legal conclusion an injury was not accidental or that it did not arise in the course of the employment a contrary conclusion awarding compensation will not be upheld.

4. SAME—*burden is on administrator to prove death occurred in course of employment.* Under the Workmen's Compensation act the burden is on the administrator to show that the death of his intestate was caused by accidental injuries arising out of and in the course of the employment, and such proof must either be by direct evidence or by evidence from which such inference may be fairly drawn without being based upon mere conjecture or surmise.

5. SAME—*when the death of an employee does not occur in the course of employment.* Where an employee of a harvester company engaged in setting up binders in towns within a radius of about 75 miles from the city where the company has its headquarters, and where he was not to report until he finished his work, leaves his work unfinished and starts for the city to spend

Sunday without authority from the company and not on any business of the company, his death in a crossing accident, when the hired automobile in which he was riding was struck by a train, cannot be said to have occurred in the course of his employment.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. OSCAR M. TORRISON, Judge, presiding.

PHILIP S. POST, and DAVID A. OREBAUGH, (EDGAR A. BANCROFT, of counsel,) for plaintiff in error.

FRANCIS BORRELLI, and RICHARD J. FINN, for defendant in error.

Mr. JUSTICE CRAIG delivered the opinion of the court:

James F. Bishop, as administrator of the estate of William C. Sain, deceased, filed his petition with the Industrial Board of this State for compensation for accidental injuries sustained by his intestate which resulted in his death while in the employ of plaintiff in error, engaged in assembling farm machines in the State of Michigan. The accident occurred by the jitney bus in which the deceased was riding from Grand Blanc to the neighboring town of Flint to take a train for Detroit being struck by a train at a railroad crossing about seven miles from Grand Blanc. The Industrial Board allowed compensation. On *certiorari* to the circuit court of Cook county the order of the Industrial Board was affirmed. On motion of plaintiff in error a certificate that the cause was a proper one to be reviewed by this court was granted, and the present writ of error has been sued out pursuant to such certificate.

There is practically no controversy as to the facts. The deceased was an employee of plaintiff in error in its factory located in the city of Chicago, where it manufactures various kinds of agricultural machinery. The machines were not assembled at the plant but were shipped to the local dealer "knocked down" and were set up by employees sent

out by plaintiff in error.   In April, 1915, arrangements were made by the International Harvester Company of America, a Wisconsin corporation affiliated with plaintiff in error, with offices at Detroit, Michigan, by which, during slack times, employees from plaintiff in error's factory would be lent to it for the purpose of assembling and setting up the various kinds of farm machinery sold to local dealers in the State of Michigan.   The salaries of such employees were paid by plaintiff in error and their expenses while in Michigan by the Wisconsin corporation.   The headquarters of the latter company were maintained at Detroit, and deceased's employment was in towns within a radius of from 75 to 80 miles of that city.   He received $70 a month and his expenses.   He would be sent to the local implement dealers in the various towns in that territory, with others, to assemble the machines so they would be ready for operation in the fields.   It is admitted that all employees of plaintiff in error, including the deceased, in the plant in Illinois are under the Workmen's Compensation act of this State.   On Saturday, November 11, 1915, deceased was engaged in assembling corn binders at Grand Blanc, Michigan, where he had been sent by the Detroit office.   Three binders were at that place for assembling.   Two of them had been assembled by about three o'clock in the afternoon, when the deceased went into the store of the local dealer to whom the machines had been consigned and told him he was going to Detroit to spend Sunday and would return on Monday and finish the job.   His tools were left at Grand Blanc and he took a jitney bus for the neighboring town of Flint to take a train for Detroit.   As the bus was crossing a railroad track about seven miles from Grand Blanc it was struck by a train and Sain and two other passengers were killed.

The Industrial Board found that the general rule was for the employees engaged in that kind of work to report when a job was finished, and that it was the custom of the

employees engaged in such work to come into Detroit every Saturday evening and remain over Sunday and that their expenses on such trips were paid by the company; that the deceased had charged up his railroad fare and supper the evening of the day of the accident in his regular expense account, and that the charge for his jitney bus was added to his expense account by someone at the Detroit office after his death; also, that no complaint was made of the custom of the employees returning to and staying over Sunday in Detroit. It further appears that the deceased was a member of the Employees' Benefit Association, an organization maintained by plaintiff in error and its employees for the benefit of such of its employees as sustain injuries not covered by the Workmen's Compensation act of the State. Under the rules and regulations of the association its beneficiaries were only entitled to benefits out of such fund for such accidents as did not arise out of and in the course of the employment. Deceased was twenty-seven years of age, unmarried, and left him surviving as his sole beneficiaries his father and his mother, who received $1552.82 out of this fund and executed a release discharging the company from all further liability.

It is assigned as error that the Industrial Board erred in not crediting the above amount on the award allowed by it. This assignment of error, however, is not argued in the briefs filed in this court and is therefore deemed waived. *Glos* v. *Davis,* 216 Ill. 532; *City of Springfield* v. *Coe,* 166 id. 22.

The other grounds urged for a reversal of the judgment are: First, that the Workmen's Compensation act of this State does not apply to accidental injuries or deaths occurring outside of the State; second, that the accident in which the deceased was killed was not one arising out of and in the course of his employment. If either of these grounds is good the judgment of the circuit court sustaining the decision of the Industrial Board should be set aside.

The evidence heard by the Industrial Board is in the record, and an examination of this evidence discloses that the only testimony relied upon to sustain the finding of the Industrial Board is that of William Schulte, who was also in the employ of plaintiff in error and engaged in the same kind of work and under similar conditions as the deceased. He testified, in part, as follows: "There was no regular time for reporting to the Detroit office unless you were finished at a certain town. Sometimes we would report over the 'phone and other times we would go into Detroit. We generally managed to finish on Saturday and come in and spend Sunday at Detroit and report at the office some time late Sunday evening or Monday morning. Sometimes we reported oftener than once a week. We got our orders from the Detroit office. * * * When we were sent out on a job we were expected to finish the job before we reported. If the local dealer wanted them all finished we would finish up and when we finished we would report. Sometimes we would go to a place and the local dealer would want a certain amount of machines set up. If he had a dozen machines sitting on his premises and wanted half of them set up we would set up that many and then report, and if he wanted the rest set up that would be done at some later time. On a job 100 miles from Detroit where there were three machines to set up like here and I got two of them set up about the middle of a Saturday afternoon, leaving one to be set up, we would go back to Detroit unless the office kicked. The office had not given any specific directions what to do in that kind of a case, so that when I came in from a job to Detroit to spend Sunday I came on my own responsibility. I had never had any talk with Mr. Bordeau, the general agent at Detroit, about getting in on Sundays. Our work around Detroit was within a radius of 80 miles."

Henry A. Bordeau, the general agent at Detroit, who had supervision of the deceased and other employees simi-

larly engaged, testified that the instructions to the deceased and other employees doing like work were to go to those places where machines were to be assembled and assist the dealers to set up the machines and when through to report at the office. They were to remain at the place where they were at work until the job was completed. If they completed a job in that territory on Saturday and came into Detroit it was usual in such a case to allow their expenses. If a man came back to Detroit to spend Sunday in the middle of a job and before it was completed, the cashier who checked up the expense accounts would have erased that part of the expenses. Under the system of the company it would not be possible that there were any circumstances under which a man would have to come to Detroit every week. He further testified that as soon as his assistant found out about the accident he went to Flint for the purpose of identifying the body and rendering such assistance as he could. He brought back the expense report of deceased, which was made out excepting the last entry thereon,—the charge for the jitney bus from Grand Blanc to Flint. That was put in so that deceased would have everything that was coming to him. At that time he supposed that the deceased had finished his work at Grand Blanc. He did not know that he had left his tools or expected to return there.

Frank M. Perry, of Grand Blanc, a member of the firm which had the corn binders on which the deceased was working just prior to his death, testified: "I last saw him at two or three o'clock in the afternoon, just before he started for Flint. We had some conversation in our store. He told me he was going to Detroit and would be back Monday morning. He gave no reasons for going. He had finished setting up two corn binders and there was one yet to be set up. The work was done back of our store, at our implement building. He did not say to me that he was going to Detroit to get instructions. I don't remember that

he said he would be back Monday morning if he didn't get other instructions. The other machine was set up about a week later. We were in a hurry about the last one and expected it to be set up immediately."

This is all the evidence bearing on the question whether the accident by which the deceased met his death arose out of and in the course of his employment, and it is very clear that such evidence does not sustain the finding of the Industrial Board to that effect. It appears from the evidence that it was the duty of the deceased, under the terms of his employment, to go to such places in the vicinity of Detroit as he might be sent for the purpose of assembling machines, and that he was expected to stay on each job until it was finished unless he received orders to the contrary from the Detroit office. When he had finished his work at one place it was his duty to report that fact and receive instructions from the office or report there for further work, and in such case his traveling expenses would be allowed. It would be unreasonable to believe that the deceased or other employees of plaintiff in error were allowed to come and go at will or travel unnecessarily at the expense of their employer, and the evidence is positive to the contrary. It further appears that the trip deceased was making at the time the accident occurred was entirely unnecessary so far as the business of the company was concerned and one which was not authorized or expected by it. He had partially finished his work at Grand Blanc and started to return to Detroit without any instructions or orders from the company and not on its business, as far as shown by the evidence. Under the terms of his employment he was expected to stay there until his work was finished, unless he received orders to the contrary. The firm for whom the binders were being assembled desired the work completed at once. The deceased, however, left his tools about the middle of the afternoon and left, expecting to return and complete his work the following Monday. According to

the evidence of the manager the expense account of the deceased was allowed under a misapprehension, and ·if it had been known that the deceased had not finished his work it probably would not have been allowed. In *Dietzen Co.* v. *Industrial Board,* 279 Ill. 11, we held that an injury occurs in the course of an employment, within the meaning of the Workmen's Compensation act, when it occurs within the period of the employment at a place where the employee may reasonably be and while he is reasonably fulfilling the duties of the employment or is engaged in something incidental to it. We further held in that case that while the Industrial Board's findings of fact under the Workmen's Compensation act are conclusive on the Supreme Court, the legal conclusions of that board, based upon such findings, are subject to review, and if it is clear, upon the facts, that as a legal conclusion an injury was not accidental or that it did not arise in the course of the employment a contrary conclusion awarding compensation will not be upheld. In *Savoy Hotel Co.* v. *Industrial Board,* 279 Ill. 329, we held that under the Workmen's Compensation act the burden rests upon the administrator to show that the death of his intestate was caused by accidental injuries arising out of and in the course of the employment, and this proof must be by direct and positive evidence or by evidence from which such inference can be fairly drawn and without being based on mere conjecture or surmise.

After a careful examination of the record we are constrained to hold that there is no competent evidence to support the finding of the Industrial Board that the unfortunate accident which caused the death of Sain arose out of and in the course of his employment, and as the judgment of the circuit court must be reversed for that reason it is not necessary to pass upon the other errors assigned.

*Judgment reversed.*