THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRED BROWN *et al.* Plaintiffs in Error.

*Opinion filed April 20, 1927.*

1. CRIMINAL LAW—*when recent possession of stolen property is sufficient to convict.* The possession of stolen property, the proceeds of a burglary or larceny, soon after the commission of the offense is evidence of the guilt of the person or persons in whose possession it is found, and is sufficient to warrant a conviction unless such possession is explained, or unless there appears, from all the evidence, a reasonable doubt of guilt.

2. SAME—*errors not argued are waived.* Errors assigned but not argued in the briefs are waived.

WRIT OF ERROR to the Circuit Court of Gallatin county; the Hon. J. C. EAGLETON, Judge, presiding.

ALPHEUS GUSTIN, M. S. WISEHART, and H. R. LIGHTFOOT, for plaintiffs in error.

OSCAR E. CARLSTROM, Attorney General, JOSEPH L. BARTLEY, State's Attorney, and HARLINGTON WOOD, for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Plaintiffs in error, Fred Brown and William Brown, were convicted in the circuit court of Gallatin county on an indictment of two counts charging burglary and larceny. The court sentenced them to confinement in the State Reformatory at Pontiac for an indefinite term of from one to twenty years or until discharged according to law.

The testimony for the People is in substance as follows: On the night of April 1, 1925, a chicken house on the farm of Owen Riley, in Gallatin county, was broken into and about five chickens belonging to Riley were stolen therefrom. The door to the chicken house had been fastened with an iron bar on that night. Early next morning it was discovered that the iron bar had been removed from the door, that the door was standing open and that the chickens were missing. These facts were established by Riley and Mrs. Harry Marrow, who lived with him. Riley, after discovering that his chicken house had been burglarized, immediately went to the public road near his house and there discovered fresh automobile tracks. With the assistance of Louis Davis, his near neighbor, he traced the automobile by its tracks about seven miles to Shawneetown, then to McMurchy's poultry house, and from there to the front of the National Bank in that city, where the automobile was then parked. The car was a Buick roadster, with smooth, wide-tread tires, one of which made a distinguishing mark on the ground, by which Riley and Davis were enabled to follow it unerringly to Shawneetown. This car belonged to plaintiffs in error, who admitted that they had sold five chickens that morning at McMurchy's and received a check for $5.50 therefor, and the proof shows that they cashed the check at the National Bank. Two of the five chickens were positively identified by Riley and Mrs. Marrow as Riley's chickens. The facts that enabled them to positively identify the two chickens were that one of

them had a peculiar knot on one of its eyes and also a roupy condition and had been raised a pet. The other had a gray crepe neck. Two days after they were stolen Davis took these two chickens home in an egg case and kept them in the case until after sundown—a little after their roosting time. They were turned loose on the north side of Riley's house, and the chicken with the roupy condition and knot on its eye at once ran around the house and to the south side thereof, into the chicken house and flew up to roost. The other chicken first went to the place where Riley usually fed and watered his chickens, to eat and drink, and after eating and drinking it went promptly to the chicken house to roost. These identifying facts were testified to by Riley, Mrs. Marrow and Mr. and Mrs. Davis.

Riley and Davis were very positive that the car that they traced from Riley's home to Shawneetown and to the National Bank was the same car in which the defendants rode to Shawneetown on the morning in question. They saw the two defendants get into the car in front of the bank and leave Shawneetown that morning, going in the direction of Harrisburg. They further testified that there was no other car on that road that made a track like that car.

Melvin Brooks, of Shawneetown, testified that on April 1, 1925, he was working at McMurchy's poultry house and bought four or five hens from Fred Brown, whom he did not then know, and gave him a check for $5.50. On that same morning Riley came to the poultry house, asked about the chickens and recognized two of them as his, one of which had a knot on its eye. Frank Awalt testified that on the night of April 1, 1925, about ten o'clock, he saw the defendants at his barn, which is about two miles from Riley's home. They got into their car and went in the direction of Riley's farm.

The two defendants were the only witnesses who testified in their behalf, and their evidence is as follows: They lived in Harrisburg on April 1, 1925, and about a year prior

thereto lived in Gallatin county. About a week before the burglary and larceny with which they are charged in this case they were out of work and went to Gallatin county on a fishing trip and camped on the dredge ditch on the Richeson land, about three or four miles from Riley's home. About two or three nights before the chickens were stolen they stayed all night with their sister, near their camp. On the night the chickens were stolen three fox hunters from Kentucky, whom they did not know, drove in on the other side of the ditch on which defendants were camped. They had a Chevrolet car, 1919 model, an old Ford car and about a dozen fox hounds. On that night they chased a fox in that country with their hounds, some of which made considerable noise in the chase. Next morning they came over to defendants' camp, said they were going home, and told the defendants they had five chickens which they had brought with them to eat but that they had to sell them to buy gasoline and would take fifty cents apiece for them. Fred Brown bought and paid for them at that price. This transaction took place very early in the morning, and thereafter the two defendants drove to Shawneetown to dispose of the chickens and Fred Brown sold them at a poultry house there. He received a check for $5.50 for the chickens and took it to the bank and cashed it. They then got "a bit to eat" and about half after eight o'clock in the morning left for their camp, got their camping and fishing outfit and went to their home in Harrisburg. Fred Brown further testified that his brother had nothing to do with the buying or selling of the chickens; that he (witness) had no place to keep them and for that reason took them to Shawneetown and sold them. He also stated that he knew that he could get double the money for the chickens that he paid for them; that there were two other fellows that camped with him and his brother on the ditch, one named Shaffer and the other Arnold. William Brown also

testified that he went with his brother to Shawneetown and that "we sold five chickens down there;" that "we bought the chickens something like seven o'clock in the morning;" that he did not remember whether he got any of the money paid them for the chickens but guessed that "we did get money and what we wanted to eat." He also stated that his brother was driving a Buick roadster and that he was with him all the time. They both denied stealing the chickens of Owen Riley.

In rebuttal Ed Evans and Adam Mayhue testified that they, together with Will Dixon, Ike Lemmons and Clarence Mills, were fox hunting in the neighborhood of Riley's farm on the night his chickens were stolen; that they did not hear any other fox hounds chasing a fox in that neighborhood; that if there had been any other party of fox hunters in that country chasing a fox the great probability is they would have heard them; that their fox hounds and any other fox hounds running a fox would have gotten together, as such hounds usually do when they are chasing a fox in the same country. These fox hunters lived west of Ridgway, Illinois, about ten miles from Riley's farm.

Andrew Gross testified that he lived within a mile and a half of Riley and that he knew the two defendants. He further testified that there was no camp at the place the defendants stated they were camped on April 1, 1925, or for a week or more previous to that date, that he knew anything about.

Plaintiffs in error have only argued two grounds upon which they ask for a reversal of this judgment: (1) That the evidence is insufficient to support the verdict of the jury; and (2) that the court erred in giving People's instructions Nos. 2, 4 and 5.

We think the People's evidence makes a strong case against the defendants and that the jury were warranted in finding beyond a reasonable doubt that they were guilty as charged. A large part of the evidence is circumstantial,

but it is convincing. The very fact that the defendants had an established camp on the dredge ditch is challenged by the People's evidence, and although the defendants' testimony showed that they had two other parties in camp and that they had spent one night with their sister while in camp there, no witness was offered by them to corroborate their testimony that they did have such a camp. The possession of stolen property, the proceeds of a burglary or larceny, soon after the commission of the offense is evidence of the guilt of the person or persons in whose possession it is found, and is sufficient to warrant a conviction unless such possession is explained, or unless there appears, from all the evidence, a reasonable doubt of the defendants' guilt. (*Williams* v. *People,* 196 Ill. 173.) The jury found that the defendants' explanation of their possession of the stolen property did not rebut the presumption of guilt and that a fair and full consideration of all the evidence in the record was not sufficient to raise a reasonable doubt of their guilt, and their finding is fully sustained by the evidence in the record.

We have examined the instructions complained of by plaintiffs in error and are satisfied from such examination that they are substantially correct and that they contain no reversible error.

Other errors are assigned but not argued, and the rule is that all such errors are waived. (*International Harvester Co.* v. *Industrial Board,* 282 Ill. 489.) However, we have examined the record and find no reversible error therein.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*