(No. 18388.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CHESTER GRAVES, Plaintiff in Error.

*Opinion filed June 23, 1928—Rehearing denied October 6, 1928.*

Thomas F. Smith, and T. J. Priest, for plaintiff in error.

Oscar E. Carlstrom, Attorney General, John A. McKeene, State's Attorney, and Roy D. Johnson, for the People.

Mr. CHIEF JUSTICE DEYOUNG delivered the opinion of the court:

Chester Graves was indicted in the circuit court of Scott county for burglary and larceny. He was found guilty by a jury. Motions for a new trial and in arrest of judgment were made and denied and Graves was sentenced to the Southern Illinois Penitentiary. He prosecutes this writ of error for a review of the record.

The indictment consists of two counts. The first count charges that Graves broke into a certain building and stole one Ford radiator, one Chevrolet radiator and two Dodge radiators, valued at one, seven, ten and fifteen dollars, respectively, all the goods and chattels of James T. Green and Vernon Haggard, partners doing business as the Scott County Auto Sales Ccmpany. The second count is similar to the first, except that it charges that the entry of the building was made without force.

Green & Haggard, partners, conducted a garage and dealt in used automobiles and automobile parts in a building situated near the public square in Winchester, in Scott county. There were doors in both ends of the building, and they were kept open in the daytime so that any person might enter. Charles Campbell had a battery station in this building, and he carried the keys and opened, closed and locked its doors. In the latter part of February, 1927, one Ford, one Chevrolet and two Dodge automobile radiators belonging to Green & Haggard disappeared from the garage. Shortly thereafter the radiators were found at the place of business of Ira Flynn, who, in addition to his employment at a poultry house in Winchester, dealt in junk. No person saw the radiators removed from the garage, and there was no evidence of the forcible breaking of any door, window or lock of the building. Both Green and Haggard identified the radiators which had been stolen from them. They recognized the Ford radiator by its type and loose

straps; the Chevrolet radiator by its style and because the name on the plate was almost obliterated; one of the Dodge radiators by its honeycomb type and a repair made upon it in their shop; and the other Dodge radiator by soldering on the framework. Both valued the Ford radiator at one dollar, the Chevrolet radiator at six dollars and the Dodge radiators at fifteen and six dollars, respectively. Flynn bought radiators from Graves on February 2, 19, 21, 24 and 28, 1927, two on the first and one on each of the succeeding days. He did not ask Graves how the radiators came into the latter's possession, nor did he pay any particular attention to the radiators, because he bought them not as used parts but as junk, at seventy-five cents each. Upon the identification of the four radiators in question by Green and Haggard as their property, Flynn surrendered them to the claimants.

Graves, the plaintiff in error, prior to his arrest was a laborer and resided with his mother and grandmother at Winchester. He admitted that he sold certain automobile radiators to Flynn in February, 1927, but insisted that one was taken from a Chevrolet automobile and that four were removed from Ford automobiles. He testified that about four years before he bought a Chevrolet car from Lee Overton; that he sold the car, except the radiator, to certain junk dealers in Jacksonville, and that he sold the radiator without any repairs to Flynn on the 27th or 28th of February for seventy-five cents. He further testified that he bought a Ford car from Harold Dill; that the radiator had a large hole in it, and he removed the radiator from the car and sold it to Flynn about the 21st or 22d day of February. He denied that he ever sold any Dodge radiators or that he ever entered Green & Haggard's garage for the purpose of taking radiators, although he admitted that he had worked there.

Ed Gregory, who resided west of Winchester, testified that in February, 1927, he and his son, Fred, sold the plain-

tiff in error two Ford radiators and some truck tires. Fred Gregory, the son, corroborated his father's testimony.

For the purpose of laying a foundation for impeachment, the plaintiff in error was asked on cross-examination whether at the time he was arrested he told Charles Thady, the sheriff, and Frank Cowhick, a deputy sheriff, that he sold two radiators, one a Ford and the other a Chevrolet, for Francis Walker, their owner, and that he cashed the check given him in payment and took the money to Walker. The plaintiff in error denied that he had made any such statement. Thady, Cowhick and Green each testified, on rebuttal, that in their presence, at the time of Graves' arrest, he said that the Ford and Chevrolet radiators which he sold to Flynn did not belong to him but were the property of Walker, who asked him to make the sale; that after the sale was made he took the check received in payment to Walker, but upon the latter's objection that he could not cash it, Graves obtained the money and gave it to Walker.

The first contention made by the plaintiff in error for a reversal of the judgment is, that each count of the indictment fails to apprise the defendant of the kinds of radiators he is charged with having stolen, and hence that the indictment is uncertain and insufficient to sustain a judgment of conviction. It is argued that a Ford, a Dodge or a Chevrolet radiator may mean a radiator for any purpose, and that the omission of the word "automobile" after the trade name in each count is fatal to the indictment. A person accused of a crime should be fully informed by the indictment of all the material facts relied upon to establish the offense with which he stands charged. (*Kerr* v. *People,* 42 Ill. 307.) Articles alleged to have been stolen should be described with such certainty as will enable the court and jury to determine whether the evidence offered in support of the charge relates to the property on which the indictment is founded, and thus prevent a person from being tried for an offense other than that for which he was indicted and

to enable him to plead the judgment in bar of another prosecution for the same offense. (Joyce on Indictments,— 2d ed.—sec. 424.) A chattel may be described by the name usually applied to it or by which it is commonly known. (*Young* v. *People,* 193 Ill. 236; *Jones* v. *State,* 64 Fla. 92, 54 L. R. A. (n. s.) 71; Joyce on Indictments,—2d ed.— sec. 424.) A finished product of manufacture may be described by the name given it by the manufacturer or by the name by which the thing is commonly designated by those who use it. (36 Corpus Juris, sec. 270, p. 814.) A Ford, a Dodge or a Chevrolet automobile is often referred to as a "Ford," a "Dodge" or a "Chevrolet," respectively. It is a common practice to designate an automobile part by its generic name in conjunction with the trade name of the car, omitting the word "automobile." Motor vehicles are in such general use that few, if any, persons would fail to understand the meaning of the words used in the indictment, or to recognize clearly and distinctly the chattels the theft of which is the basis of the present charge. The contention that the indictment is uncertain in the respect stated is without merit.

Complaint is made that the trial court erred in refusing to require the prosecution to furnish a bill of particulars. When the charge against an accused person is so general or indefinite that he cannot properly prepare his defense a bill of particulars should be ordered. When, however, the indictment sufficiently informs the defendant of the offense charged against him there is no need for such a bill. (*People* v. *Poindexter,* 243 Ill. 68.) Whether the People shall be required to furnish a bill of particulars in a given case rests in the discretion of the trial court, and it is only in cases where it is clear that there has been an abuse of this discretion that the denial of a motion for such a bill is error. (*People* v. *Birger,* 329 Ill. 352; *People* v. *Munday,* 280 id. 32; *People* v. *Poindexter, supra; People* v. *Smith,* 239 Ill. 91; *DuBois* v. *People,* 200 id. 157.) The indictment in

the instant case sufficiently apprised the plaintiff in error of the charge made against him, and hence there was no abuse of discretion in denying the motion for a bill of particulars.

Charles Thady, the sheriff, a witness called by the prosecution, testified that the plaintiff in error had been in custody since his arrest except for a short period when he escaped from jail. The State's attorney twice interrogated the sheriff with reference to the escape, but objections to these questions were sustained, the court adding that the plaintiff in error was on trial for a single offense. It is insisted that the questions concerning the escape were asked for the purpose of prejudicing the jury against the plaintiff in error. Objections to the questions were sustained, the questions remained unanswered, and the court's caution eliminated the escape from the jury's consideration. It does not appear that either the court's rulings or remark gave the plaintiff in error any cause for complaint.

The plaintiff in error contends that the testimony of Thady, the sheriff, Cowhick, the deputy sheriff, and James T. Green, on rebuttal, that he, the plaintiff in error, when arrested, told them that he sold the Ford and Chevrolet radiators to Flynn for Francis Walker was improperly admitted. It is competent to impeach an accused person's testimony by showing that he made statements out of court concerning material matters inconsistent with his testimony on the witness stand. (*People* v. *Popovich,* 295 Ill. 491.) Graves' statement, if made, was not a confession or admission of guilt. He never denied that he sold automobile radiators to Flynn. The damaging effect of the alleged statement consisted not in any admission it contained, but rather in its conflict with the defense made at the trial. If Graves had established as his defense that he innocently acquired possession of the Ford and Chevrolet radiators from Walker and sold them for him he could not have been convicted of stealing them. The statement, therefore, was of an exculpatory nature. Before making such a statement it

is not required that the accused person be warned that it may be used against him, nor, to admit it in evidence, is it necessary that preliminary proof of its voluntary character be made. *People* v. *Okopske,* 321 Ill. 32; *People* v. *Kircher,* 309 id. 500.

Complaint is made of the fifth and ninth instructions given at the request of the People. The fifth instruction, it is argued, did not sufficiently define a reasonable doubt or fully instruct the jury upon that subject. It is doubtful whether any better definition of a reasonable doubt can be found than the words themselves. (*People* v. *Barkas,* 255 Ill. 516; *People* v. *Fox,* 269 id. 300.) It has been held that the phrase needs no definition. *People* v. *Schuele,* 326 Ill. 366; *People* v. *Rogers,* 324 id. 224; *People* v. *Johnson,* 317 id. 430.

The ninth instruction was as follows:

"You are further instructed by the court, that circumstantial evidence in criminal cases is the proof of such facts and circumstances connected with or surrounding the commission of the crime charged as tend to show the guilt or innocence of the party charged, and if the facts and circumstances shown by the evidence in this case are sufficient to satisfy the jury of the guilt of the defendant beyond a reasonable doubt, then such evidence is sufficient to authorize the jury in finding the defendant guilty. The law demands a conviction wherever there is sufficient legal evidence to show the defendant's guilt beyond a reasonable doubt, and circumstantial evidence is legal evidence."

There should have been incorporated in this instruction, it is contended, the statement that "the guilt of the defendant must be so thoroughly established as to exclude every other reasonable hypothesis." An instruction on circumstantial evidence given at the request of the plaintiff in error contained the substance of this statement. It is not necessary to incorporate in a single instruction all the law upon a given subject. The instructions must be taken as a

series, and the trial court did not err in giving the ninth instruction.

The twenty-eighth instruction requested by the plaintiff in error, it is insisted, was erroneously refused. This instruction required the jury's conviction of the defendant's guilt to amount to a moral certainty. It is doubtful whether the words "moral certainty" would convey to the jury any clearer idea than the words "reasonable doubt." Proof beyond a reasonable doubt and proof to a moral certainty are synonymous and equivalent. (*Carlton* v. *People,* 150 Ill. 181.) Several given instructions informed the jury that the defendant must be proved guilty beyond a reasonable doubt. Under these circumstances the refusal to give the twenty-eighth instruction was not prejudicial to the plaintiff in error.

The final contention of the plaintiff in error is that the evidence is insufficient to convict. While no witness testified that he saw the plaintiff in error take the radiators from the garage, yet there was direct evidence that he was familiar with the interior of the building where the radiators were stored and that he sold them to Flynn, the junk dealer, from whom they were recovered by their owners. The possession of stolen property, the proceeds of a burglary or larceny, soon after the commission of the offense, is evidence of the guilt of the person in whose possession it is found, and is sufficient to warrant a conviction unless such possession is explained or there appears from all the evidence a reasonable doubt of his guilt. (*People* v. *Brown,* 325 Ill. 307; *People* v. *Everett,* 242 id. 628; *Flanagan* v. *People,* 214 id. 170; *Smith* v. *People,* 115 id. 17.) The plaintiff in error denied that he sold the four radiators in question to Flynn, and two witnesses testified that he bought two Ford radiators from them. There was testimony that the plaintiff in error made inconsistent explanations of how a Ford and a Chevrolet radiator came into his possession. Important links in the chain of the prose-

cution's evidence were supplied by circumstances, but resort may be had to circumstantial evidence to prove the *corpus delicti* in the same way and to the same extent that such evidence may be received to connect the accused person with the commission of the offense. (*People* v. *Spencer,* 264 Ill. 124; *People* v. *Goodwin,* 263 id. 99.) It was the jury's province to determine the facts, and it cannot be said that the evidence, taken as a whole, does not justify the verdict.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*