(No. 13567.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* BOZO POPOVICH, Plaintiff in Error.

*Opinion filed December 21, 1920.*

1. CRIMINAL LAW—*statement of witness out of court is admissible to impeach testimony.* It is competent to show, as a matter of impeachment, that a witness, even though he be the defendant, made a statement out of court concerning material matters inconsistent with his testimony on the witness stand.

2. SAME—*verdict will not be set aside unless it is clearly the result of passion or prejudice.* The Supreme Court will not set aside a verdict of guilty as unwarranted by the proof unless it is so palpably against the weight of the evidence as to show the verdict to have been the result of prejudice or passion.

3. SAME—*evidence of particular circumstance to show violent character of the deceased is not admissible.* Although several witnesses in a murder trial testify that the deceased had a reputation for being a violent and dangerous man, testimony of a witness to the effect that the deceased at one time drew a pistol on him is properly denied admission.

4. SAME—*instructions should be considered as a series.* Instructions to a jury are to be considered as a series, and omissions in one instruction which are supplied in others will be considered harmless unless there is an obvious tendency to mislead the jury.

WRIT OF ERROR to the Circuit Court of Franklin county; the Hon. CHARLES H. MILLER, Judge, presiding.

R. E. HICKMAN, G. A. HICKMAN, and CONRAD SCHUL, (LAYMAN & JOHNSON, of counsel,) for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROY C. MARTIN, State's Attorney, and C. W. MIDDLEKAUFF, for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error was indicted, tried and convicted of the murder of Meko Depich and sentenced to the penitentiary at Menard, Illinois, for a term of fourteen years. He seeks here to reverse the judgment. The grounds upon which such reversal is sought are, that the verdict of the jury was the result of prejudice or passion and not supported by the evidence, and error in the admission of testimony and in instructing the jury.

The killing occurred in the village of Sesser, in Franklin county, Illinois, on the night of December 12, 1919. Plaintiff in error and deceased were miners and natives of Montenegro, as were most of the witnesses in the case. The village of Sesser is in the mining district of Franklin county. Plaintiff in error at the time of the killing was occupying, with Bozo Isanovich, a room in the house of Mike Shofer, they cooking their own meals and doing housekeeping for themselves. This house faced south. The southwest room was occupied by plaintiff in error and Isanovich and the room immediately east was occupied by Mike Tomonovich, the rooms being connected by a door. In the south end of the room occupied by plaintiff in error there was a door leading to the outside. The killing occurred in the room of plaintiff in error. He and Isanovich had occupied this room for about a month prior to the killing. It appears from the evidence that Isanovich and Tomonovich, who were witnesses on the part of the People, were, and had been for some time, friends of the plaintiff in error and that there never had been any trouble between

him and either of them; that on the day of the killing Isanovich arrived at his room with the deceased about eight o'clock P. M.; that plaintiff in error was not there and had not been for the greater portion of the day; that Isanovich prepared supper for himself and plaintiff in error and waited for the latter's return to the house; that as he did not come Isanovich put away his supper for him; that the deceased, Depich, and Isanovich talked for some time, and upon hearing Tomonovich in his room adjoining, they asked him to come in and play for them on a musical instrument similar to a guitar which he had. Tomonovich came in and played and the three men talked for about thirty minutes, when plaintiff in error entered the room and asked them what they were doing there. Isanovich and Tomonovich testified that plaintiff in error was pale and trembling and seemed to be excited. Tomonovich testified that his face looked changed,—looked pale and nervous; that he said, "What meeting you got in here?" that deceased said, "No meeting;" that Isanovich said, "No meeting; what's the matter? Set down, Bozo;" that plaintiff in error drew an automatic pistol and began shooting; that he shot Isanovich first, then Depich; that all three of the men were shot; that he fired about nine shots; that deceased was shot while sitting on a chair, and that he did not get up but fell to the floor and lay there till after the plaintiff in error left the house, when he was picked up and put upon a bed; that Isanovich was shot twice through the body and Tomonovich was shot through the knee as he was seeking refuge under the bed. Depich was shot through the abdomen, the bullet entering his right side and perforating his intestines. He was taken to the hospital at Centralia, Illinois, and operated upon, and died on the 26th day of December of said bullet wound. Both Isanovich and Tomonovich testified that no one attempted to harm plaintiff in error in any way. Plaintiff in error after the shooting left the house, walked up the railroad tracks

to Centralia, and was there captured and brought back by the officers.

Plaintiff in error claims, and so stated in his testimony, that at the time he shot, all three men were coming toward him and that he fired in self-defense. He stated that the deceased was engaged in enlisting soldiers to aid in the fight to restore to his throne the king of Montenegro; that on the day before the killing the deceased came to his room and solicited him to sign up for the Montenegrin army; that he told him he could not,—that he had previously signed up to fight for the United States; that in order to avoid trouble with deceased he left his room and remained away until after twelve o'clock at night; that he had been told that the deceased was a violent and dangerous man. Plaintiff in error also testified that on the evening of December 12 he came to his room about half-past nine; that he found his room-mate (Isanovich) and Mike Tomonovich there, with the deceased; that upon his entering the room Isanovich asked him if he was ready to sign up; that he refused to sign, whereupon Isanovich attacked him, grabbing him by the right shoulder, and a fight of all four of them ensued. Plaintiff in error testified that the deceased and Isanovich and Tomonovich were armed at the time, and in the fight ensuing the three men were shot.

On the trial of the cause both Isanovich and Tomonovich testified that they did not have a gun, although the former was later recalled and testified that after plaintiff in error went away he got a pistol from the drawer of a dresser in his room, fearing that he might return, and that he later gave it to Mrs. Shofer, the wife of the landlord, who hid it. Mike Shofer, the landlord, testified that after the shooting Depich gave him a pistol that he had in his pocket and that Shofer hid the same; that Depich's pistol contained three loaded shells but no shells that had been fired. He also testified that he got a 32-calibre revolver from a drawer of a dresser in the room of Tomonovich.

Plaintiff in error testified that the three men in the room shot at him. This is denied by Isanovich and Tomonovich, who say that no one but the plaintiff in error fired a shot. There is no evidence tending to corroborate the statement of plaintiff in error in this regard. On cross-examination he was asked if he did not say to R. S. Watkins, sheriff of Franklin county, on the next day after the shooting, that he had slipped up to the window of his room before coming in and saw the deceased and Isanovich and Tomonovich and that the men were talking low, and that he went away to some other house, stayed for about an hour and came back, and that he came into the room with a revolver in his hands and as soon as he got into the room the men attacked him. The plaintiff in error replied that he did not make such statement. He was also asked if he did not say to Jim Isom, a witness for the People, that he did not know that he shot Tomonovich; that he was sorry, as Tomonovich was his friend; to which he answered that he did not make such a statement. Watkins and Isom testified in rebuttal to his having made the statements referred to in the impeaching questions. It is urged that the court erred in permitting these questions to be answered in rebuttal. It is always competent to show, as a matter of impeachment, that a witness made a statement outside of court concerning material matters inconsistent with his testimony on the witness stand. This statement did not purport to be a confession and was not testified to as such but was offered as matter of impeachment and was competent for that purpose.

There appears to have been no evidence of previous trouble between or among these men. Isanovich and Tomonovich had both been friends of plaintiff in error. Both of these men testified as to what occurred at the time of the killing, and their testimony is directly contradictory to that of the plaintiff in error. The record does not contain evidence tending to corroborate the testimony of plaintiff in error. We have many times held that this court will

not set aside a verdict unless it is so palpably against the weight of the evidence as to show the verdict to have been the result of prejudice or passion. *People* v. *Karpovich,* 288 Ill. 268; *People* v. *Lutzow,* 240 id. 612; *People* v. *Deluce,* 237 id. 541; *Cronk* v. *People,* 131 id. 56; *Steffy* v. *People,* 130 id. 98.

Plaintiff in error also contends that it was error to refuse the testimony of Dan Parrish, to the effect that the deceased at one time drew a pistol on him to compel him to sign an agreement to fight for the king of Montenegro. This was not error. While there was testimony of numerous witnesses that the reputation of the deceased for being a violent and dangerous man was bad, yet such testimony did not aid or render competent the testimony of Parrish sought to be introduced here.

It is also urged as error that the State's attorney was permitted to interrogate plaintiff in error relative to an article in a Montenegrin paper which purported to have been signed by him; that after asking plaintiff in error if he wrote the article the State's attorney did not seek to introduce a copy of the paper in evidence or to follow it up with further proof. The record shows that plaintiff in error stated in answer to the questions put to him that he did not write the article referred to. Plaintiff in error having denied writing the article, the paper was not admissible in the absence of proof that the article was written by him, and we cannot say that the State's attorney did not exercise good faith in asking the question even though he knew that he had no further proof of the authorship of the article referred to, since he could not know what the plaintiff in error would testify to concerning such authorship.

It is also urged that the court erred in giving the 16th instruction offered by the People, which is as follows:

"A person must be presumed to intend to do that which he voluntarily and willfully does in fact do, and must also be presumed to intend all the natural, probable and usual

consequences of his act. Therefore, when one person assails another violently with a dangerous weapon, likely to kill, and which in fact does destroy the life of the person assailed, the natural presumption is that such assailant intended death, or other great bodily harm, and in the absence of the evidence to the contrary, this presumption must prevail. The willful use of a deadly weapon without excuse or provocation, in such a manner as to imperil life, generally indicates felonious intent."

Plaintiff in error contends that it was error to give this instruction, for the reason that it ignored the defense of self-defense. The instruction is objectionable on the ground that it presents an abstract proposition of law, but the giving of such an instruction will not work a reversal unless it can be shown that some harm has been done by it. (*Moore* v. *People,* 190 Ill. 331; *Howard* v. *People,* 185 id. 552.) Instructions to a jury are to be considered as a series, and where omissions occur in one instruction which are corrected in others, such omissions will be considered harmless unless there is an obvious tendency to mislead the jury. (*Spies* v. *People,* 122 Ill. 1.) An examination of all the instructions given, as a series, shows that plaintiff in error offered, and the court gave, fourteen instructions on the law of self-defense as applied to this case, and we are of the opinion that the jury received thorough instruction on that branch of the law, and that the giving of this instruction could not have resulted in misleading the jury.

The testimony concerning what occurred at the time of the killing is conflicting, but we are of the opinion that the jury were justified in deciding the issues against the plaintiff in error.

We find no reversible error in the record. The judgment of the circuit court of Franklin county will therefore be affirmed.                    *Judgment affirmed.*