(No. 32383.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. WILFRED BILOCHE, Plaintiff in Error.

*Opinion filed March 23, 1953—Rehearing denied May 18, 1953.*

WILFRED BILOCHE, *pro se.*

IVAN A. ELLIOTT, Attorney General, of Springfield, and JOHN GUTKNECHT, State's Attorney, of Chicago, (JOHN T. GALLAGHER, RUDOLPH L. JANEGA, ARTHUR F. MANNING, and WILLIAM J. McGAH, JR., all of Chicago, of counsel,) for the People.

Mr. JUSTICE DAILY delivered the opinion of the court:

Wilfred Biloche, plaintiff in error, was tried without a jury in the criminal court of Cook County and found guilty of the crime of "unlawful sale of a narcotic drug." He was sentenced to the penitentiary for a term of two to five years and has sued out this writ of error to review his conviction. Appearing *pro se,* he has assigned many errors, chief of which are: (1) That improper evidence was admitted at his trial; (2) that the evidence was insufficient to support a finding of guilt; (3) that the judgment of conviction was based on perjured testimony; (4) that plaintiff in error was compelled to give evidence against himself; and, (5) that the court erred in overruling his motions for new trial and in arrest of judgment.

Recourse to the record reveals that police officer Albert Kroll was the only witness who testified for the prosecution in presenting its case in chief. He testified that on the night of September 6, 1951, at approximately 10:00 P.M., he and his partner, officer Emmett McMorrow, observed one Wallace Manning, who was familiar to them, walking in the vicinity of Ashland Avenue and Thirteenth Street in the city of Chicago. The officers followed him in their car and, when Manning halted in an areaway beside an apartment building at 1341 Washburne Avenue, the officers parked their car, which bore no official markings, at the

curb on the opposite side of the street some twenty to thirty feet away. Within a few minutes, the plaintiff in error came out of the door of the apartment and engaged in a conversation with Manning. He was heard to say: "I will take care of that," after which he re-entered the building. Kroll testified that when this occurred, he and his partner left their car, crossed the street and concealed themselves behind a parked car some three feet from the areaway where Manning was standing. When plaintiff in error returned to the street, Kroll saw him hand Manning a small white object, which the officer had occasion to believe was narcotics, and in turn Manning handed plaintiff in error three one dollar bills. As the exchange was completed, the officers came around the parked car and each seized one of the men. Kroll testified that as he and his partner approached, Manning dropped a small white object and ground it into the sidewalk with his foot and that when plaintiff in error was seized he had three one dollar bills crumpled in his hand. The witness took custody of the bills, placed identifying marks on them and, at the trial, they were introduced in evidence.

Continuing his testimony, officer Kroll stated that Manning and plaintiff in error were searched for weapons on the street, then taken into the apartment which connected with the doorway plaintiff in error had used, explaining that they were taken inside at once to secure them against an attempt to escape. He testified that his partner then left to call a patrol wagon, while he remained to guard Manning, plaintiff in error, and a woman who had admitted them to the apartment. In the direct examination of officer Kroll which followed the disclosures related above, he was asked: "* * * did you have ocasion to return to the sidewalk where you first observed Biloche and Manning?" and he replied: "We did." He was then asked: "What, if anything, did you do at that time and place, officer?" to which he responded: "We found one capsule of heroin just where

he was standing and there was another capsule there but it was ground up." When asked: "Did you have occasion to recover that one capsule?" his reply was: "We did." When being cross-examined about these matters, Kroll admitted that he had not returned to the areaway himself but that his partner had done so, and had, on his return to the apartment, told the witness in the presence of plaintiff in error and Manning, that the capsule was found where the men had been standing. Also, while being cross-examined, Kroll was asked if he had not spent about thirty to forty-five minutes searching the apartment and in questioning the woman who was present there. His response was: "I don't think we were up there more than three or four minutes. The narcotics were right on top of the dresser."

Returning to officer Kroll's testimony on direct examination, he testified that when Manning and plaintiff in error were first apprehended, the former admitted that he had come to the Washburne Avenue address to buy narcotics, but that plaintiff in error denied that he had sold any, stating that he had been on his way to a store when arrested. The following day, Kroll and McMorrow questioned the two men at police headquarters with no other persons present. As a result of the questioning, Manning made a written, signed statement, which recites that it was given of his own free will, wherein he admitted that he was a narcotics addict; that he paid $1.50 a capsule for heroin and used one daily; that he had paid Biloche $3.00 in front of 1341 Washburne Avenue for two capsules just prior to the time of their arrest the previous evening; that Biloche had come out of the house located at 1341 Washburne Avenue; that he had made one previous purchase of narcotics from Biloche at the same place; and that he had been directed to Biloche by another addict named Mix. Plaintiff in error was present when this statement was given and on two occasions was asked if he had anything to say about Manning's accusation. His first reply was:

"He is lying," and at the conclusion of the statement he said he had nothing to say. The questions directed to plaintiff in error were included in the signed statement of Wallace Manning and when the statement was offered into evidence the court ruled that only those questions and answers participated in by plaintiff in error were admissible.

From officer Kroll's testimony it was also learned that the capsule found had been taken to the crime laboratory, and the court admitted in evidence, on stipulation of the parties, a laboratory report which analyzed the contents of the capsule as heroin.

The first witness for the defense was Wallace Manning, who, in direct contradiction to his signed statement, testified that he was not a narcotics addict and that he had not known plaintiff in error previous to the time of their arrest. He denied buying narcotics from plaintiff in error, stating that at the time of the arrest he was walking home from work and had stopped plaintiff in error on the street to ask him for a match with which to light a cigarette. He told of being seized and searched by the officers and professed never to have had more than fifty-two cents on his person that evening. He confirmed that the officers had taken him and plaintiff in error into the apartment and stated that after they had been there thirty-five minutes, officer McMorrow left, then returned fifteen minutes later announcing that he had found a capsule on the sidewalk. When cross-examined, he admitted making and signing the statement previously described, but testified that it was untrue and that it had been given under duress. In regard to the latter claim his first version was that the officers had threatened to beat him but had not struck him; however, upon being asked the question again by defense counsel, he stated that Kroll had slapped him twice at a time when no other persons were present. Following the witness's cross-examination, his previous conflicting statement was offered and received into evidence over objection.

Plaintiff in error took the stand in his own behalf, and his version, too, was that Manning had stopped him on the street for a match at the time he was arrested. He denied having three dollars in his hand and stated that the officers had taken it from his pocket. He, likewise, told of being taken into the apartment of a woman, claimed to be unknown to him, and stated that the officers had spent forty-five minutes searching the apartment and questioning the woman before officer McMorrow left to call a patrol wagon. He said that when McMorrow returned to the apartment he said: "Look what I found on the sidewalk." Plaintiff in error further testified that he lived at 1329 South Central Park and denied living at 1341 Washburne Avenue or that he received mail there. He explained his presence in the vicinity of the Washburne Avenue address by stating that he was returning from a movie and had taken a short cut through the areaway adjacent to 1341. Further, he told of being present at the time Manning gave his statement and of his telling the officers that the statement was a lie. On the stand he reiterated his denial that he had ever sold narcotics to Manning or any other person.

In rebuttal, the People called officer McMorrow who testified that he was with Kroll when plaintiff in error was arrested; that plaintiff in error had three one-dollar bills in his hand when arrested; and that mail addressed to plaintiff in error at 1341 Washburne Avenue had been found in the apartment. He further testified that he had remained in the apartment only three or four minutes before returning to the areaway where the arrest had taken place. Both he and Kroll, who was also called in rebuttal, denied that Manning had ever been threatened or struck when his statement was given.

The record discloses that the proofs were closed at this point and plaintiff in error's counsel presented his argument to the court. At its conclusion the court found plaintiff in error guilty as charged in the indictment and denied

motions for a new trial and in arrest of judgment. A colloquy followed between the court and counsel relative to the sufficiency of the evidence, in particular that involving the issue of whether plaintiff in error lived at 1341 Washburne Avenue. The court questioned plaintiff in error, who again denied that he received mail at that address or that he had an account at a shop, whose bill McMorrow had testified to seeing. Plaintiff in error's mother was present and when called by the court, testified that her son had never lived at 1341 Washburne Avenue, but had always lived with her at 1321 South Central Park. Following this, the court recessed the cause until later in the day to enable the prosecution to obtain further evidence on the issue. As he did so, the court said: "\* \* \* you are going to save yourself some time in the penitentiary if you tell me the truth. I have already found you guilty. If I find the officer is lying, then I can still do something about this finding." When the court reconvened, plaintiff in error voluntarily took the stand and admitted that he had lied to the court and stated that he did live at 1341 Washbourne Avenue. After some further discussion, the court again made a finding of guilty as charged in the indictment and imposed a sentence of two to five years in the penitentiary.

Relying upon the familiar rule which states that accusations of guilt made in the presence of a defendant, and denied by him, are not admissible in evidence against such defendant, (*People* v. *LaCoco,* 406 Ill. 303; *People* v. *Schallman,* 273 Ill. 564; *People* v. *Harrison,* 261 Ill. 517,) plaintiff in error contends that the court erred in admitting into evidence the incriminating statement of Wallace Manning. The record discloses that the trial court was thoroughly familiar with the rule relied upon, for when the statement was offered in evidence by the prosecution in its case in chief, the court admitted only so much of it as related to questions directed to and answered by plaintiff in error. It was not until the witness Manning was sought

to be impeached that the statement was admitted in evidence in full. It is always competent to show, as a matter of impeachment, that a witness, even if he be the defendant, made a statement outside of court concerning material matters inconsistent with his testimony on the witness stand. (*People* v. *Popovich,* 295 Ill. 491; *People* v. *Graves,* 331 Ill. 268; *People* v. *Romano,* 337 Ill. 300; *People* v. *Gleitsmann,* 361 Ill. 165.) The record here discloses that the statement was not admitted as proof of the plaintiff in error's guilt but that it was offered to impeach the witness Manning, and was accepted by the court for that purpose. Inasmuch as it is a fundamental right in any case to show that a witness has made statements out of court in conflict with his testimony on the stand, (*People* v. *Gleitsmann,* 361 Ill. 165, p. 170,) we must conclude that the statement was competent for that purpose and, being restricted by the court to that purpose, was properly admitted in evidence. Within this same contention, plaintiff in error argues that the statement was incompetent evidence even to impeach, because it was obtained by force and duress. As we view it, such an objection does not go to the competency of the evidence but to the credibility of the witnesses who testified concerning it, and to the weight to be given their testimony. From the record, we are not compelled to say that the court committed error in this respect.

Plaintiff in error next makes a contention that the court permitted the prosecution to abuse the right of cross-examination, a result which he says occurred because his counsel was incompetent. This assignment of error has not been pursued in the argument here presented, nor have the specific instances complained of been brought to our attention. This court will not search the record for error and, lacking any argument on the point, will deem it abandoned.

The next contention made is that the court erred in overruling plaintiff in error's motion for new trial, and as grounds therefore it is urged (1) that the finding of guilt

was based on perjured testimony; (2) that the indictment was void because it was founded on incompetent testimony; and (3) that the evidence was insufficient to support the finding of guilt. It is plaintiff in error's theory that officer Kroll perjured himself when his testimony that: "*We* found one capsule of heroin," (emphasis ours), is considered in the light of his testimony on cross-examination where he admitted that it was his partner who had found the capsule. We do not so interpret the evidence. It is obvious that the officer was referring to himself and his partner as a team when he said "We," and that it was not a deliberate effort to mislead the court or prejudice the plaintiff in error. Kroll and McMorrow for the People, and Manning and plaintiff in error himself, for the defense, all testified that McMorrow left the apartment and returned saying he had found a capsule on the sidewalk. While Kroll's answer was not technically responsive to the question asked him, it was allowed to stand without objection. In addition, the subsequent testimony of the other witnesses indicates that he had sufficient information upon which to base his reply and that such information was correct. We find no reason to say that the testimony complained of was perjury.

The contention that Kroll's testimony before the grand jury was incompetent is not supported by the record. No evidence was adduced to show what was presented to the grand jury. The matter was not presented for consideration and ruling in the trial court, nor is the issue apparent in the record which has been presented to this court. It is therefore not a matter which is before this court to review. (*People* v. *Corbett,* 387 Ill. 41.) As a practical matter, it is our opinion that the record demonstrates conclusively that officer Kroll was competent to testify before the grand jury.

The sufficiency of the evidence in this case depends solely upon the credibility of the witnesses and the weight to be given their testimony. This court will not sustain a

conviction on a criminal charge where the evidence is improbable, unsatisfactory or reasonably doubtful. On the other hand, we will not substitute our judgment for that of a jury, or of a judge sitting without a jury, in merely weighing the credibility of the witnesses, where the testimony is conflicting. (*People* v. *Sheppard,* 402 Ill. 411; *People* v. *Franklin,* 390 Ill. 108; *People* v. *Langer,* 384 Ill. 608.) We have detailed the evidence here at considerable length and find nothing which moves us to disturb the finding of the trial court. Plaintiff in error has, by his interpretation of the evidence, singled out various trivial discrepancies which he insists make the prosecution's witness unworthy of belief. Looking to other parts of the record which explain and correct the alleged discrepancies, and considering that the jurist who heard and saw the witnesses was in the best position to determine their credibility, we cannot say that all the evidence was of a nature insufficient to support a finding of guilty.

The evidence was short and uncomplicated, and plaintiff in error presented no questions of law in support of his motion for new trial. Under such circumstances, we cannot hold that it was error to overrule it. *People* v. *Novak,* 370 Ill. 220.

It is next contended that the court erred in overruling plaintiff in error's motion in arrest of judgment: first, on the ground that the evidence shows that officer Kroll was incompetent to testify before the grand jury, and second, because the indictment, which charged the sale of a narcotic, was deficient in that it did not contain a count charging plaintiff in error with possession of a narcotic. The first ground relied upon has already been discussed in this opinion and need not be repeated except to say that the contention made finds no support in the record here presented. As to the argument that the indictment was deficient, even if the contention be taken as substantively correct, there is nothing in the record to show that an ob-

jection was made to the sufficiency of the indictment. This is a matter which can be raised only by a motion to quash the indictment and the ruling thereon must be preserved by a bill of exceptions. Having failed to make and preserve such objections, plaintiff in error cannot now raise the question on the record presented to this court. (*People* v *Knox,* 302 Ill. 471; *People* v. *Corbett,* 387 Ill. 41.) On the contentions made, we find no basis to hold that the court erred in overruling the motion in arrest of judgment.

The final contention to be considered is that the trial court erroneously compelled plaintiff in error to testify against himself. It is his theory that he was forced to testify against himself when he returned to the witness stand and admitted to the court that he had lied when he testified that he did not live at 1341 Washburne Avenue. The record shows that the demand for additional evidence on the issue, and the court recess that followed, were forced by the objections made by plaintiff in error's counsel to the sufficiency of the evidence then in the record. The record further shows that during the recess, both the prosecution and plaintiff in error's counsel discovered evidence that accused had lived at the Washburne Avenue address at the time of his arrest. Before such evidence was presented, however, plaintiff in error voluntarily came forward to confess that he had perjured himself about his place of residence. While the court had stated that plaintiff in error's truthfulness in the matter might have effect on his punishment, we do not interpret such a statement as being a compulsion on him to testify. Plaintiff in error came forward of his own free will in the hope of securing leniency and it is our opinion that any compulsion that existed was created by the plaintiff in error himself when he lied under oath. We must conclude that the contention is wholly lacking in substance or merit.

We have examined the record closely and find that plaintiff in error was afforded a fair and impartial trial

and was represented by competent counsel. We find no prejudicial error in the rulings of the court and conclude that the court was justified from the evidence in finding plaintiff in error guilty beyond a reasonable doubt.

The judgment of the criminal court is affirmed.

*Judgment affirmed.*