Joe Cruz MARTINEZ, Appellant (Defendant below),

v.

STATE of Wyoming, Appellee (Plaintiff below).

No. 2831.

Supreme Court of Wyoming.

July 21, 1959.

342 Pac.2d 227.

326

L. A. Crofts and W. A. Smith, Lander, for appellant.

Thomas O. Miller, former Atty. Gen., Maxwell E. Osborn, former Deputy Atty. Gen., Norman B. Gray,

328

Atty. Gen., W. M. Haight, Asst. Atty. Gen., and G. L. Spence, County and Pros. Atty., of Fremont County, Lander, for appellee.

Before BLUME, C. J., and PARKER and HARNS-BERGER, JJ.

## OPINION.

Mr. Justice PARKER delivered the opinion of the court.

Joe Cruz Martinez, charged with first degree murder, was tried by a Fremont County jury, found guilty without qualification, was sentenced to die in the gas chamber, and has now appealed to this court.

The pertinent facts of the homicide were as follows:

On the morning of January 1, 1957, sometime after eight o'clock, the defendant, who was employed on the Barquin ranch, came to Mike Barquin and reported that Ramon Gonzales, another employee of the ranch, had been shot. Barquin in company with Martinez went to the bunk house, found Gonzales lying on his bed with a bullet hole in his skull but still breathing. Barquin immediately went for the authorities who upon their arrival found Gonzales dead. Subsequent autopsy disclosed the head wound to be the cause of death.

Martinez' story to Barquin and later to the sheriff was that on the night before, New Year's Eve, he and Gonzales had been in various places in the town of Lander and thereabouts, drinking and carousing, had a fight with some Indians who had later followed them out of town and had run them off the road with the car; Martinez and Gonzales had speeded up and returned to the bunk house of the Barquin ranch; afterward the Indians drove up in the car whereupon Martinez crawled under his bed; the Indians came into the bunk house, started an argument with Gonzales, and shot him.

The sheriff and other officers made an examination at the scene of the death, took pictures, and then proceeded to make an investigation in an effort to determine the actual occurrences. In so doing they found that Gonzales had been shot through the head with a small caliber rifle (later determined to be a .22) and also found that a .22 caliber rifle was missing from the ranch.

The sheriff almost immediately suspected Martinez of the crime and after completing preliminary check at

the ranch asked defendant if he would go to Lander to assist with the investigation to discover the persons who had committed the crime. Martinez readily agreed and remained with the sheriff through that day and the next, staying the night at the jail. The State makes a point of the fact that he was not then under formal arrest.

The following day the missing rifle was discovered hidden under a granary at the ranch. This was later proved to be the weapon which fired the fatal shot. On the night of January 2 about 9:15 Martinez, having been told that the rifle had been found and that it bore his fingerprints, made a signed confession which was admitted in evidence at the trial over defendant's objections. This confession, the basis for the conviction of first degree murder, related the activities in the early part of the evening of December 31 as being substantially the same as those previously recounted. From the point that the two started back to the Barquin ranch, defendant's story was entirely changed. He said that on the return trip he and Gonzales fell to quarreling about their evening's lack of success with women, whereupon deceased criticized Martinez, calling him a foul name, opening the car door, and suggesting that they fight. Defendant said he did not get out of the car because he was half asleep and sick with all the drinking he had done. Instead he finally convinced Gonzales to get back in the car and they went on home. Defendant lay down on the bed and Gonzales, after acting undecided, finally lay down. Martinez then turned off the light and wished Gonzales happy dreams, whereupon Gonzales called him the foul name he had previously used, thereby indicating that he was still angry. Defendant said he thought Gonzales would get up and cut his throat off; that he (de-

fendant) wouldn't take any chances; and that he got up, slipped on his shoes and trousers, walked out and got the gun from the porch of a nearby house, checked it to see if it was loaded, returned, and shot deceased.

In their argument for reversal, defendant's counsel insist that there was error on the part of the court and of the prosecuting official in certain aspects of the trial. They also contend that, although they made no objection at the trial regarding the instructions given or refused, the court instructed improperly. Their principal contention, however, seems to be that there was insufficient evidence to support the verdict and judgment of first degree murder, the confession being both inadmissible and insufficient, even if admitted, to show premeditated malice—there being no other evidence on which the jury's finding could be legally based. We shall consider these arguments in the order named.

## I. Errors in the Conduct of the Trial

One error charged by defendant's counsel was the refusal of the trial court to exclude witnesses from the courtroom until after they had been sworn, the swearing having taken place immediately following the prosecution's opening statement. No authorities are cited to substantiate the claim of error which seems to be founded in the fact that the witnesses, by hearing the opening statement, would know the prosecution's theory of the case prior to the time they were called upon to testify. They point to the evidence regarding defendant's sobriety and say that the testimony was just "too pat" to have been spontaneous and uninfluenced. Counsel admit that the exclusion of witnesses is a matter within the discretion of the trial court, and they do not insist that such discretion was abused. We

think that whenever exclusion of witnesses is indicated, the better practice is to make the exclusion at the beginning of the trial. However, defendant's arguments fail to convince us either that the court's discretion was abused or that defendant was prejudiced.

It is argued that the court erred in permitting Mike Barquin to testify "He [defendant] was not drunk" in response to the question, "Do you have an opinion whether he was drunk or not?" Although a lay witness may be allowed to testify as to his opinion on the sobriety of an individual if he states the facts upon which the opinion is based,[1] the witness' answer in the instant situation was unresponsive and therefore should have been stricken upon the request of defendant's counsel. Nevertheless, the facts regarding defendant's behavior had been recited previously by Barquin; and even without the expression of his opinion, the jury was informed of his reaction as to defendant's behavior. Accordingly, there would seem to have been no prejudicial error.

It is insisted that the court erred in overruling an objection to a question asked defendant in which there was an allusion to a discrepancy between his testimony at the trial and at the preliminary hearing. The contention that the ruling was improper is not supported by a reason. A witness may properly be cross-examined regarding both judicial and extrajudicial statements which he has made on material matters. State v. McCarroll, 123 Or. 173, 261 P. 411; McCann v. State, 20 Ariz. 489, 182 P.96; People v. Walker, 140 Cal. 153, 73 P. 831; People v. Pete, 123 Cal. 373, 55 P. 993;

---

[1] State v. Cantrell, 64 Wyo. 132, 186 P.2d 539.

People v. Popovich, 295 Ill. 491, 129 N.E. 161; People v. Biloche, 414 Ill. 504, 112 N.E.2d 162, certiorari denied 346 U.S. 878, 74 S.Ct. 131, 98 L.Ed. 385; 348 U.S. 846, 75 S.Ct. 69, 99 L.Ed. 667; Morris v. State, 100 Fla. 850, 130 So. 582; Shaw v. State, 136 Miss. 1, 100 So. 519; 3 Wharton's Criminal Evidence, 12 ed., §§ 891, 943.

Error is charged because the prosecuting official in cross-examination undertook to show inconsistencies between defendant's testimony and his prior conversations in the jail cell, tape recorded without his knowledge. The jury did not hear the recording which was played to defendant in the presence of the court; however, defendant before the jury was repeatedly confronted with quotations purporting to come from his recorded conversations. Defendant's counsel to substantiate the charge of error say that the hiding of a microphone anywhere is not looked upon with favor, citing two law review articles,[2] neither of which is primary authority. Although we too look with disfavor upon surreptitious listening, the lack of argument showing it to be error in this case makes discussion of the point unwarranted.

Defendant also complains of certain other statements by court and prosecuting counsel, especially questions on voir dire concerning the views of the chief executive on punishment, urging that such views might have had some effect upon the jurors. No cogent argument and no authorities are presented in substantiation of the claimed improprieties, and we do not think they merit discussion here.

---

[2] 7 Wyo.L.J. pp. 44, 91.

## II. Instructions

Although it is admitted in argument that no objections were registered at the time of the trial, defendant now contends that certain improper instructions were given to the jury. It is conceded that the instructions are all standard and commonly given by trial courts in homicide cases, but it is said that the use of abstract words and unusual phraseology fails to disclose to the jury in·this case their specific duties in deliberations and gives unwarranted emphasis and perspective on points of importance. The instructions thus under fire are ones which advise the jury that they may disregard any part of the witness' testimony if he has sworn falsely to material facts, that the law presumes a person to intend the results or consequences of an act intentionally committed, and that the defendant's confession should not be considered for any purpose unless the jury believed it to have been voluntarily made. We were provided with no valid argument and no authorities bearing on the alleged impropriety of the instructions, and we perceive nothing wrong in what was sent to the jury. After most careful consideration, we think that the instructions enunciate rules of law which have long been recognized as correct in Anglo-Saxon courts and propound philosophies which are essential for the jury to consider in arriving at a fair verdict.

## III. Confession

We proceed then to what appears to be the most serious charge of error raised by the defendant: That the confession was inadmissible and, even should this court hold the confession admissible, it was ineffective to show premeditated malice.

A consideration of the statements in the confession itself, the evidence of the officers in charge of defendant at that time, and defendant's own testimony at the trial taken in conjunction with other matters in the record disclose the confession of Martinez to have been voluntary. Other than defendant's own words, evidence which pointed to his being guilty of the homicide was entirely circumstantial; his association with deceased immediately prior to the shooting, his knowledge of the whereabouts of the rifle, and his attempt to explain the shooting and the physical facts at the death scene. Such circumstances disclose nothing to indicate whether or not the person who fired the fatal shot acted purposely and with premeditated malice. Thus, the sole basis for defendant's conviction of first degree murder was his extrajudicial confession; and this, if considered in its *entirety*, failed to show premeditated malice.

Defendant's story, as recounted in the January 2 typed confession to the county and prosecuting attorney, contained some statements which were signficant:

"* * * I didn't get off the car [to fight deceased, who on the way back to the ranch had urged, "let's go to blows"]. I was about half asleep and sick with all that drinking we had done. * * * I said [after the two had gone back to the bunkhouse and defendant had lain down on the bed], 'Well, happy Dreams, boy,' 'Sure you old son of a bitch, happy dreams, same to you' * * * so I figured, 'Dog gone this has gone too far. I'll bet this old boy will get up and cut my throat off.' So I thought 'No, I'm not taking any chances.' I got up then and slipped my shoes on and my trousers. I already had my shirt on, and I walked out and went and got the gun."

These and similar statements which he made nullify the element of premeditated malice so far as the confession is concerned. If he was half asleep and sick from drinking, this was evidence which should have been considered as tending to show that he had not planned beforehand to kill the deceased; and if he acted from fear, he could not have been following a preconceived plan when he fired the fatal shot.

We are fully cognizant of the rule that the exculpatory part of a confession need not be believed. Mortimore v. State, 24 Wyo. 452, 161 P. 766; 7 Wigmore on Evidence, 3 ed., § 2100, p. 495; 2 Wharton's Criminal Evidence, 12 ed., § 396, p. 143; 2 Underhill's Criminal Evidence, 5 ed., § 407. However, we think that if any essential element of the crime is negatived by the confession, then that essential element must be supported by other evidence before there can be a valid conviction. In Eagan v. State, 58 Wyo. 167, 128 P.2d 215, 225, approved in State v. Helton, 73 Wyo. 92, 276 P.2d 434, we said, "the admission of homicide must be considered in connection with any mitigating or exculpatory statements made in connection therewith." Applying that rule to the present case, the jury was bound to have considered Martinez' statement that he was half asleep and sick from the drinking, that he was fearful of what Gonzales would do to him, and further that the two had been carousing for several hours, during which time deceased had called defendant names and had wanted to fight him. There was no evidence produced by the State which contradicted these statements of defendant. The opinion evidence that Martinez was not drunk between eight and nine o'clock, New Year's morning might at first be thought to contradict any claim of drunkenness, but when it is remembered that this was some one and a half hours or more after

the shooting and after a most sobering crisis, the apparent contradiction is without much force.

Evidence of premeditation, other than the confession, was entirely lacking; and the confession introduced uncontradicted factors which negatived premeditated malice. In the instant case there was clear evidence of a homicide committed by defendant, and we think from a consideration of all of the evidence in the record that the killing was so reckless as to warrant the jury in finding that it was done purposely and maliciously so as to constitute second degree murder. See Dickinson v. State, 222 Ind. 551, 55 N.E.2d 325.

The judgment and sentence herein is set aside and the district court is ordered to resentence the defendant for second degree murder.

Affirmed as modified.