Argued April 9, affirmed May 23, 1962

STATE OF OREGON *v.* McGAHUEY

371 P. 2d 669

*G. W. Kellington,* Medford, argued the cause for appellant. With him on the brief was Robert D. Heffernan, Jr., Medford.

*Alan B. Holmes,* District Attorney, Medford, argued the cause and filed a brief for respondent.

Before McAllister, Chief Justice, and Rossman, Warner, Perry, Sloan, O'Connell and Goodwin, Justices.

McALLISTER, C. J.

The defendant LeeRoy Sanford McGahuey was indicted for the murder of Rod Cameron Holt, a child 23 months of age. He entered a plea of not guilty and also gave notice of his intention to prove insanity as a defense. The jury found defendant guilty of murder in the first degree and did not recommend life imprisonment. The mandatory death sentence was imposed, and an automatic appeal has been taken to this court pursuant to ORS 138.410–138.430.

The only error assigned is the refusal of the court to withdraw the charge of murder in the first degree from consideration by the jury. Defendant contends that there was insufficient evidence of deliberate and premeditated malice.

There is relatively little dispute about the facts of this case. It appears that defendant for about 30 days prior to February 13, 1961 had been living in an apartment in Central Point with Loris Mae Holt and her child, Rod Cameron Holt. On the date mentioned the defendant killed both Mrs. Holt and the child. One of defendant's confessions contains the following description of the tragedy:

"I got up at about 5:30 a. m. and build the fires. I made some coffee. I took a cup of coffee to Loris while she was in bed.

"I next cleaned up the front room & kitchen. At about 7:20 a. m. Loris had got up and came out into the front room. She had a slip on & came out there & put her hose on. Before this at about 7:00 a. m. she had asked me to call the cleaners where she works & tell them she was sick and would not be to work. I made this call between 7 and 7:20 a. m. After she had put on her hose she was bent over putting her shoes on and she had her back turned towards me. I don't know why I did this

but I picked up a clawhammer off the bar & struck her on the side of the head. She fell to the floor. I next went to a mantle in the front room and got a 22 revolver which was loaded. I next shot her in the back of the head once with this gun. I next put the gun on the chouch. I picked her up and druged her to the bedroom closet. I returned & got the hammer & struck her a few more times on the head. I went to the kitchen and got a knife. I put the knife about where I though her heart was & pushed it in. I pulled it out & through it in the back of the closet. I went back to the front room & picked up the gun. I returned to the bedroom & put the gun on the dresser. I next looked in the closet at her. I come out of the closet & looked at the baby and it was asleep. I was wondering what to do with the baby. I did not want it to go to the wrong people, like his father so I struck him with the hammer on the head while he was in the cribb. I next picked up the baby, hammer & blankets & carried them to the closet & put the baby beside her. I also put the hammer down there. I returned to the bedroom & took a blanket or quilt off the trunk & covered them in the closet with it. I put the gun in a paper bag. This bag had a towel, shirt, a thermos of coffee and a few personal items in it. I left the house and the front door locked as I left. I put the bag in the car. I could not get the car started. I returned to the apt. to see if I had left something & also to leave the car keys and took another look at them. I wanted it to look as if some one had broken into the apt., so I went outside to the bedroom window and cut the screen with my pen knife. I returned to the bedroom & opened the window from the inside. I next put the table with the TV on it against the front door. I also pushed a chair against it. I left by the way of the bedroom window. * * *"

■ This court has uniformly held that whether "deliberate and premeditated malice" has been proved

beyond a reasonable doubt is a question for the jury. *State v. Hansen,* 195 Or 169, 211-12, 244 P2d 990 (1952); *State v. Leland,* 190 Or 598, 637, 227 P2d 785, *aff'd,* 343 US 790, 72 S Ct 1002, 96 LEd 1302 (1952); *State v. Henderson,* 182 Or 147, 191-93, 184 P2d 392, 186 P2d 519 (1947); *State v. Ogilvie,* 180 Or 365, 366-67, 175 P2d 454 (1946); *State v. Butchek,* 121 Or 141, 151, 159, 253 P 367, 254 P 805 (1927); *State v. Megorden,* 49 Or 259, 273, 276, 88 P 306 (1907); *State v. Morey,* 25 Or 241, 245-46, 35 P 655, 36 P 573 (1894); *State v. Hansen,* 25 Or 391, 409, 35 P 976, 36 P 296 (1894); *State v. Carver,* 22 Or 602, 605, 30 P 315 (1892).

■ The terms "deliberation" and "premeditation" as used in our homicide statutes have a well defined meaning. *State v. Leland,* supra, at 640-41; *State v. Ogilvie,* supra, at 374-76; *State v. Butchek,* supra, at 156-57; *State v. Megorden,* supra, at 273; *State v. Morey,* supra, at 244; *State v. Henderson,* 24 Or 100, 102-05, 32 P 1030 (1893); *State v. Ah Lee,* 8 Or 214, 220-21 (1880).

In this case the trial court carefully explained the terms "deliberation" and "premeditation" to the jury in instructions to which no exception was taken. We have reviewed the evidence in this case with great care and are satisfied that there was ample evidence from which the jury could find that defendant killed Rod Holt with deliberate and premeditated malice.

Defendant relies primarily on certain statements contained in the testimony of the psychiatrists regarding his mental condition after he had killed Loris Holt and before he killed Rod Holt. It is sufficient to say, first, that there was ample psychiatric testimony to support the verdict of the jury, and second, that in any event the jury were not bound by the opinions of

the psychiatrists. *State v. Leland,* supra, (190 Or at 637). As this court said in the *Leland* case:

"* * * It was the province of the jury to determine the questions of premeditation and deliberation and malice from all the evidence in the case, some of which was decidedly in conflict with the expert testimony to the effect that the defendant was incapable of premeditating. It has been held by this court that premeditation and deliberation are always questions for the jury. State v. Butchek, supra, 121 Or 159."

■ We have carefully reviewed the record and are satisfied the judgment must be affirmed. Defendant was represented, both in the trial court and on appeal, by able counsel and had a fair trial, free from error. The law authorizes the jury to determine the degree of the crime and to assess the penalty, and we are bound by its findings.

The judgment is affirmed.