Walter BUCKLES, Appellant
(Defendant below),

v.

The STATE of Wyoming, Appellee
(Plaintiff below).

No. 4028.

Supreme Court of Wyoming.

Aug. 17, 1972.

J. F. Mahoney, Casper, for appellant.

Clarence A. Brimmer, Atty. Gen., and Richard A. Stacy, Asst. Atty. Gen., Cheyenne, for appellee.

Before McINTYRE, C. J., and PARKER, McEWAN, and GUTHRIE, JJ.

Mr. Justice GUTHRIE delivered the opinion of the court.

Defendant, Walter Buckles, was charged and convicted of first degree murder by a jury in the District Court of Natrona County. From that conviction he appeals.

Defendant urges as grounds for reversal the following: That the verdict was not sustained by adequate evidence and was contrary to law. In support of this first assignment he contends that the evidence was not sufficient to prove premeditated malice and that the State failed to sustain its burden to prove the sanity of defendant. Defendant also alleges there was error committed in instructing the jury both by instructions given and the refusal of a proffered instruction. He further urges seven other grounds for reversal, all dealing with evidentiary rulings and in one instance the reception of certain pictures as exhibits.

The defendant and his wife met Crowder, the deceased, during the afternoon of March 14, 1970, at a place called Hank's Bar. They were strangers prior to the time of this meeting. During their conversation it was agreed that they would go to Crowder's home to see his horses. After spending some time there they left the Crowder place, Mrs. Buckles leaving with Crowder in his pickup and defendant alone in his car. They became separated and defendant proceeded to the Oregon Trail Bar, parking his car in front so his wife might see it.

Some time later, at approximately 8 p. m., Mrs. Buckles came to the Oregon Trail Bar where defendant was playing pool. She told defendant and various other persons in the bar that she had been raped by deceased. Defendant continued playing pool and his wife had some drinks. Around 10 p. m. defendant and his wife left the bar and went to the home of deceased, stopping en route and arriving some time later. Upon Crowder's return around midnight he was shot by defendant with a .30-06 sporting rifle and death ensued almost immediately.

At 12:51 a. m. defendant and his wife appeared at the Casper Police Station where officer Thomas was on duty. Mrs. Buckles, who came in first, was crying. About a minute later Buckles came into the office carrying a rifle which he slammed on the desk. Thomas knew both Mr. and Mrs. Buckles and was on a first-name basis with defendant. Thomas inquired what was going on and defendant responded, "I killed that dirty sonofabitch that raped Margie." He said it happened out of town and that he could not give the exact location. The sheriff's office was called. Thomas then advised defendant he did not have to talk to him about it, and that if he did Thomas would have to testify in court. He told defendant where the phone was and that he could use it to call anybody he chose, or if he wanted to get an attorney. Defendant then told Thomas they had been friends for a long time and that he knew Thomas would not "screw him around." Thomas also called Lt. Brandon and shortly thereafter Brandon and deputies Hartman and Adamson of the sheriff's office arrived. During the conversation had with Thomas defendant told him Margie had been raped and that he went looking for the man who did it and had shot him with the gun he brought in to Thomas.

Deputies Hartman and Adamson took defendant to the scene of the killing where defendant indicated the spot from which he fired the shot, the location of his automobile, and several other details. On the way to the scene defendant volunteered without questioning that his wife had been raped, and that he "shot the s. o. b., and what would you do in a case like that."

After their return from the Crowder place officers Lewis and Thomas took a statement from defendant which was taped. The tape and a transcription thereof were admitted in evidence. This statement recites generally the facts above outlined but differs and adds to these facts in the following respects: That his wife had not chosen to say anything in front of the men at the bar and that she called him over and told him that she had been raped. That he quit in the middle of his game of pool and went to get deceased to "bring him in." That he should have called the sheriff's department. That they went by the two bars on the way out but neither deceased nor his pickup was there. That they then went to deceased's place, which they had a hard time finding. That deceased was not there when they got there. In defendant's own words the following occurred:

"* * * and I just pulled up there, around behind where I showed you from where I shot him tonight, Butch, You know. And his pickup was gone, I just pulled up and he pulled out around me, he came in and pulled out around me up there and he got out of there and he slammed his door and I told him, 'Hey'. I got out of my car, I didn't have no gun or anything in my hand. I said, 'Hey, friend, you are going to town with me'. He said, 'I will take care of you right now', and he started back for his car and I reached. Well, I figured the guy has a gun, and I reached in the back seat and I grabbed the gun and I threw a shell in it and I just shot at him. I mean, I didn't mean to kill him, because it has a scope sight on it and I just threw a shell in there and I shot at him. Maybe shake him up and maybe get him away from his pickup."

The statement further continued that after the shot he threw his gun to the ground and ran over to Crowder and discovered

he was dead. When he learned this he went immediately to the police station. He stated he had not meant to shoot Crowder but intended to shoot above him. He further recites his wife's conversation of deceased's threats at the time of the rape.

The thrust of defendant's argument is that under the holdings in Eagan v. State, 58 Wyo. 167, 128 P.2d 215, 226, and State v. Helton, 73 Wyo. 92, 276 P.2d 434, 443, the accused's statement is not sufficient evidence to establish premeditation and malice. He argues that the extra-judicial statement considered in its entirety fails to show premeditated malice and that Martinez v. State, 80 Wyo. 325, 342 P.2d 227, 231, applies.

It is conceded that it is the burden of the State to prove premeditated malice beyond a reasonable doubt to sustain a conviction of first degree murder. Deliberation and premeditation as the basis for a conviction of murder may be inferred from the facts and circumstances surrounding the killing. State v. Campbell, 146 Mont. 251, 405 P.2d 978, 982, 22 A.L.R.3d 824; State v. Cates, 97 Mont. 173, 33 P.2d 578, 586; State v. Montoya, 72 N.M. 178, 381 P.2d 963, 964; State v. McGahuey, 230 Or. 643, 371 P.2d 669, 670. We have heretofore held in State v. Riggle, 76 Wyo. 1, 298 P.2d 349, 360, rehearing denied 300 P.2d 567, certiorari denied 352 U.S. 981, 77 S.Ct. 384, 1 L.Ed.2d 366, that it is for the jury to weigh this evidence. It is the jury's province to weigh and allocate the weight to be given to all evidence, direct or circumstantial. State v. Lindsay, 77 Wyo. 410, 317 P.2d 506, 512; 41 C.J.S. Homicide § 340, p. 105.

Defendant's reliance upon the above-mentioned Eagan, Helton, and Martinez cases is misplaced. The factual situations in all these cases make them inapplicable here. In Eagan this court reduced a conviction of second degree murder to manslaughter. Defendant therein defended on the theory that the killing was accidental and unintentional. Defendant cites therefrom the rule that if an accused is the sole witness to the incident his testimony cannot be arbitrarily rejected but this is qualified in a manner which distinguishes it from this case. The court makes this rule's application dependent on the sole witness not being impeached and that his testimony is not improbable and not inconsistent with the other facts and circumstances shown. In Eagan there was considerable other evidence supportive of the testimony of that defendant. The different facts shown in this case bring this modification of the rule into play because the statement of defendant is impeached in several particulars and is inconsistent with proven facts. Eagan involves the question of malice and the sufficiency of evidence to show that element. The court, 128 P.2d at 225, applied the rule asserted by defendant that when the statement or evidence of the defendant is relied upon to establish the element of malice, which is not the case here, the mitigating exculpatory statements must be considered if proof of the element lies in the statement. The logical converse thereof arrives at a rationale unfavorable to this defendant. The strength of the evidence negativing malice shown in the Eagan case has no counterpart here.

The Helton case, supra, involved a defendant charged with first degree murder wherein a conviction was had upon second degree murder and was reduced to manslaughter by this court. That opinion is significant in that it notes the prosecution's failure to impeach the credibility of defendant and that the State relied upon defendant's testimony to establish a necessary element of its charge. Defendant asserts Helton modifies Eagan. With this we do not agree. Both are completely consistent. It was concluded there was no evidence to determine the act was done maliciously. In Helton, 276 P.2d at 443, the court comments that though motive is not necessary its absence has considerable influence in determining the degree of guilt. Strong motive is present here.

In the Martinez case, supra, conviction was had for first degree murder and

the court reduced it to second degree based on the State's failure to show premeditated malice. This opinion, 342 P.2d at 231, notes that the sole basis for a first degree conviction was defendant's confession, and that considered in its entirety it failed to show "premeditated malice"; that the circumstances proven disclosed nothing to indicate the shot was fired purposefully and with premeditated malice. The Martinez opinion only reiterates that if any essential element is negatived by the confession then this element must be supported by other evidence before there can be a valid conviction, 342 P.2d at 231. It was noted that there was no other evidence produced to contradict these statements. That is not the case here. The statement of the defendant was impeached in many details and is not consistent with certain other facts which tend to prove both malice and premeditation. Defendant's voluntary and spontaneous statements to officers Thomas, Hartman, and Adamson are not consistent with this statement and tend to impeach it. In his statements to his friend Thomas no suggestion was made by defendant that he was attempting to bring in deceased in answer to a criminal charge and accidentally shot him. There was no suggestion of self-defense or accident to any of these officers at that time but rather the before-quoted statements freely volunteered.

The unexplained killing of deceased's dog and the bullet holes in the dog house, along with the undisputed evidence there were at the scene seven empty shell cases fired from defendant's rifle, sustain an inference both of malice and that defendant was on the premises some time prior to the arrival of deceased and was awaiting him. This necessarily involved a reloading of the rifle, the capacity of which was five shells in the magazine and one in the chamber. At the time the rifle was brought in there was one discharged shell in the chamber and there were at least two rounds in the magazine. The lapse of approximately two hours between the time the wife advised him of the rape and his departure from the Oregon Trail Bar to

seek deceased gave him time for reflection. The determination in finding the place, although with difficulty, indicates a definite decision to see and face deceased—for what purpose only the trier of fact can determine.

The physical facts at the scene, including the fact deceased was shot in the back, the bullet entering at the midline of the back at the level of the tip of the shoulder, shattering the spinal column at that level and passing to the front slightly upward and to the left, and that at some time during this incident defendant was at or near the dog pen as evidenced by the empty shells found in that vicinity and the shooting of the dog and shooting at the dog house, certainly belie defendant's statement that he drove in and very shortly, and while he was still in his car, deceased pulled out around him in his pickup; that deceased got out of his pickup and then defendant got out and yelled at deceased and told him he was going to take him with him; that deceased turned back to his pickup and defendant was afraid he had a gun, although there is no evidence from which he might have formed this belief; that it was at that time defendant got his gun from his car and pumped a shell into the chamber. The position of the body and angle at which the bullet struck deceased in the back is simply not consistent with the statement of defendant and his indication of where he stood when the rifle was fired. It was more consistent with an inference that the shot was fired at about the time deceased had gotten out of his pickup with his back or side to the defendant.

This court has heretofore noted that the absence of motive is an important fact in determining the degree of guilt. State v. Helton, supra, 276 P.2d at 443; State v. Bruner, 78 Wyo. 111, 319 P.2d 863, 870. The converse is obvious, and it has been so held. State v. Knox, 236 Iowa 499, 18 N. W.2d 716, 724, and cases cited therein. The importance of this is very clearly set out, particularly when as in this case the claim is of an accidental shooting. There

appears in the case of State v. Henderson, Mo., 301 S.W.2d 813, 817, the following:

" * * * Of course, the issue of motive is more important where the evidence is circumstantial and may well be determinative of the case where it is claimed the shooting was done by accident. However, that is a matter for the jury to determine in connection with all of the facts and circumstances in evidence."

See also 40 Am.Jur.2d Homicide, § 440, pp. 702–703; 41 C.J.S. Homicide § 318, p. 32. Motive in a criminal case has been defined as "that which leads or tempts the mind to indulge in a criminal act." Thompson v. United States, 1 Cir., 144 F. 14, 18. Being advised of the rape of a loved one would normally create a strong sense of anger, outrage, and desire for vengeance. Had defendant been, as he intimates in his statement, solely interested in bringing deceased to account for a violation of the law rather than the exercise of personal vengeance, it would seem that he would have called the police department where he knew at least one member on a first-name basis. Defendant in this case sought out and spent considerable time in finding the deceased, carrying a rifle with him to the scene.

There was sufficient evidence from which the jury could have found both malice and premeditation.

 Although defendant offered no evidence of insanity, the State called Dr. Pace out of order, because of other engagements the doctor had, to testify to defendant's anticipated insanity defense. Defendant contends the State failed in its burden to prove defendant's sanity beyond a reasonable doubt. In this case the only evidence which defendant asserts was produced appears in the cross-examination of Dr. Pace. The witness Pace testified without equivocation that the defendant was without psychosis and was sane; that he knew the nature and quality of his acts and the consequences thereof; that he knew the difference between right and wrong; that he had no disease of the nervous system, brain, or spinal cord. On cross-examina-

tion it was developed that defendant did have certain personality disorders; that his intelligence had regressed; that there was some evidence of deterioration. A great many hypothetical questions were posed to the doctor as to the effect of certain disorders but the witness thought them inapplicable to defendant. At best defendant presents only a question of the credibility of the witness Pace. The jury was left the determination of whether there was any real conflict in this testimony. Having resolved this in favor of the State, this court cannot interfere with such finding, based as it is on credible evidence. Reilly v. State, Wyo., 496 P.2d 899, 902, rehearing denied 498 P.2d 1236; Murdock v. State, Wyo., 351 P.2d 674, 678; State v. Riggle, supra. From the record here presented the State is also aided by the presumption of sanity in the absence of evidence of insanity having been presented. Section 7–242(a), W.S. 1957. See also Reilly v. State, supra.

 Defendant assigns as error the failure of the court to strike the testimony of Yarbrough, overruling the objection to the Ebinoff testimony, overruling the objection to the testimony of Satterwhite, and the court's refusal to strike portions thereof. The basis of these objections was that the evidence was cumulative and was not material. Insofar as the objection is made that the evidence is cumulative, we find nothing to consider. This is a matter in the trial court's discretion, 3 Wharton's Criminal Evidence, § 843, p. 218 (12th Ed.); and error cannot be predicated on its admission where there is no abuse of discretion. Deeter v. State, Wyo., 500 P.2d 68; 4 Jones on Evidence, § 981, p. 1848 (5th Ed.).

 On the question of the reception of evidence, where materiality is raised the trial court must be granted a reasonable discretion. State v. Wallace, 83 Ariz. 220, 319 P.2d 529, 531. It will not be disturbed in the absence of a showing of abuse of discretion. Wilson v. United States, 9 Cir., 250 F.2d 312, 325–326, rehearing denied 254 F.2d 391; Gayer v. State,

247 Ind. 113, 210 N.E.2d 852, 855, 212 N.E.2d 544. It may be further observed that this testimony has to do with Marjorie Buckles' appearance, the conversation, and the time she remained at the Oregon Trail Bar, along with the time of departure of the two parties. This is certainly material in light of the fact it tends to contradict the statement of defendant both as to the time of his departure and the communication of the alleged rape.

Defendant further challenges the trial court's ruling sustaining objection to questions asked Dr. Pace on cross-examination. No explanation of the claimed error, its possible prejudice, or authority is advanced. Therefore no discussion is required. Alcala v. State, Wyo., 487 P.2d 448, 457, certiorari denied, 405 U.S. 997, 92 S.Ct. 1259, 31 L.Ed.2d 466, rehearing denied 406 U.S. 911, 92 S.Ct. 1613, 31 L.Ed.2d 823; Drummer v. State, Wyo., 366 P.2d 20, 26; Valerio v. State, Wyo., 429 P.2d 317, 319. It might also be observed that immediately following this the court allowed an answer to substantially the same question.

 Defendant excepts to the giving of paragraph 2 of Instruction 20A and the ground of his objection is that it does not fully or adequately express the law upon the subject. A general and indefinite assignment of error does not raise a question we can reach on appeal. Alcala v. State, supra; Crouse v. State, Wyo., 384 P.2d 321, 332. Defendant having pointed out no error in this instruction nor having cited any authority, we must presume that none was found. Further, no authority is set out to sustain defendant's contention as to error in the refusal to give proffered Instruction M. We view this not only as an incorrect statement of the law but that the same matter was covered in paragraph 3 of Instruction 20A. Failure to point out the

---

alleged error and authority therefor also being absent, it would be improper to consider the same. Alcala v. State, supra; Drummer v. State, supra; Valerio v. State, supra.

■ Instruction 16 was objected to because it followed the M'Naghten Rule and defendant believed the jury should be instructed along the lines of the Durham case, it being a more enlightened rule. Although defendant cites 45 A.L.R.2d 1445, no other argument is made thereon.[1] There is no occasion to discuss or consider a modification of the M'Naghten Rule as applied in this state.

From what appears herein the trial court properly overruled defendant's motion for acquittal and the judgment must be affirmed.

Affirmed.

---

1. Although not presently available in the reports, we find of more than passing interest the quoted portion of an opinion in 40 Law Week 2834 from the case of United States v. Brawner, decided June 23, 1972, by the Court of Appeals of the District of Columbia, as follows:

" * * * The rule of Durham v. United States, 94 U.S.App.D.C. 228, 214 F.2d 862 (1954) which excused an unlawful act if it was the product of a mental disease or defect, will no longer be in effect."