(No. 23195.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. GEORGE FRANCIS, Plaintiff in Error.

*Opinion filed December 19, 1935.*

FRANK E. LICKHALTER, for plaintiff in error.

OTTO KERNER, Attorney General, LOUIS P. ZERWECK, State's Attorney, and A. B. DENNIS, for defendant in error.

Mr. JUSTICE WILSON delivered the opinion of the court:

The defendant, George Francis, and Hilmar Larson, were indicted in the circuit court of St. Clair county for burglary and larceny. Upon the conclusion of the testimony the trial judge instructed the jury to find Larson not guilty. The jury found the defendant guilty as charged and fixed the value of the property stolen at $100. His motion for a new trial was denied and he was sentenced to imprisonment in the penitentiary. He prosecutes this writ of error for a review of the record.

Between the evening of August 31, 1934, and the morning of September 1 the house of Martin Oehmke in East St. Louis was burglarized and the following articles stolen: One Masonic lodge jewel, a Masonic lapel button, an Eastern Star pin, one pair of cuff buttons, a gold ring, a pair of opera glasses, two ten-cent savings banks, a collection of foreign money and some old American coins. Oehmke and his family were away on a vacation at the time of the burglary. Although the house was unoccupied a caretaker examined the premises every day, and while there, on the afternoon of August 31, observed no evidence of the forcible breaking of any door or other part of the house. When Oehmke returned he found that a screen door had been smashed and a glass panel broken. On September 1 two of the Masonic emblems were found in a pawn-shop in East St. Louis, and when arrested in the afternoon of the same day the defendant had on his person six Mexican coins, two British coins, one Philippine peso, two pairs of cuff buttons, a small flash-light and $2.50 in money, and Larson, a pair of opera glasses. All of the property recovered by Oehmke was either in the possession of the defendant and Larson or had been pawned by the former at the pawn-shop. The owner identified the articles which had been stolen from him.

On the morning of September 1 the defendant went into a drug store in East St. Louis and requested Robert Rogers, an employee, to weigh a package containing small pieces of gold, stating that he desired to mail the package to New York. While weighing the package Rogers observed that it contained Masonic emblems and that the name of Oehmke was engraved on one of them. He became suspicious when he saw Oehmke's name on the jewel and notified the police. Glenn Ruffner, a police officer, received the description of the stranger at the drug store. He then made a search of the pawn-shops in the city and found two of the Masonic jewels owned by Oehmke in a pawn-shop operated by Betty Marks. She testified that she

purchased them as old gold for five dollars from a man who gave the name of Raymond Miller. According to Ruffner, on the occasion that he arrested the defendant he claimed that the Masonic emblems had been given to him by one Charlie and that he had obtained the other articles from Charlie when the latter became intoxicated. Ruffner also testified that the defendant stated that he had spent the previous night at a certain rooming house; that the witness checked this statement, and was informed by the proprietors that the defendant came in about 3:00 o'clock in the morning of September 1 in the company of a person unknown to them.

The defendant testified in his own behalf and denied breaking into any house on either August 31 or September 1. Likewise he denied that he stole the Masonic emblems found in the pawn-shop or any of the articles found on him when apprehended. From his testimony it appears that he stayed at the Transit Bureau, in East St. Louis, for the three nights prior to August 31; that he remained there until 9:00 o'clock in the evening of that day, when he made his departure, together with one Charlie Ward; that he and Ward, whom he had met at the Bureau two days previously, repaired to a rooming house an hour later; that Ward registered for both of them, and that they remained there until about 7:00 o'clock the next morning. He added that the proprietor of the rooming house and his wife, in the presence of Ruffner, another police officer and himself, verified his statement that he came to their place at 10:00 o'clock on August 31 and left the next morning about 6:00 or 7:00 o'clock. The defendant admitted that he brought two Masonic emblems to Marks and pawned them, but insisted that he did so as a favor to Ward. In particular he testified that Ward requested him to pawn the emblems, stating that he was a member of the Masonic and other fraternal organizations and that the emblems belonged to him; that his companion first told him to weigh

them at a drug store, and that he complied with this request; that he then returned the package containing the emblems to Ward, who had remained outside; that they proceeded to the pawn-shop, where Ward again handed the articles to him and directed him to sell them; that he again complied, gave the proceeds of the transaction to Ward, and that the latter paid him one dollar for his services. According to the defendant, Ward also asked him to hold some old coins, a pair of opera glasses and a pair of cuff buttons for him, and the witness assented. He testified further that he and Ward went back to the Transit Bureau and separated about 10:00 o'clock; that he had not seen Ward since; that he then met Larson, and that he gave the opera glasses to him, as Ward had stated he had no further use for them.

The sole contention of the defendant is that the evidence is insufficient to support the conviction. It is true, as he asserts, that important links in the chain of the People's evidence were supplied by circumstances. Circumstantial evidence is, however, legal evidence. There is no legal distinction between direct and circumstantial evidence, so far as their weight and effect are concerned. (*People* v. *Martishuis,* 361 Ill. 178; *People* v. *Buskievich,* 330 id. 532.) A burglary can seldom be proved by direct evidence of the actual breaking and entry. It has been said that the inference of guilt, in most cases, must necessarily be drawn from other facts satisfactorily established. (*People* v. *Sampson,* 337 Ill. 643.) The evidence in the present case discloses that the house of Oehmke was burglarized and that certain articles were stolen. It is conceded that the defendant sold two Masonic emblems to a pawnbroker, from whom they were recovered by their owner, and that when arrested he had in his possession the greater part of the remaining articles stolen. The possession of stolen property, the proceeds of a burglary or larceny, soon after the commission of the offense, is evidence of the guilt of the person in whose pos-

session it is found and is sufficient to warrant a conviction unless such possession is explained or there appears from all the evidence a reasonable doubt of his guilt. (*People* v. *Sampson, supra; People* v. *Graves,* 331 Ill. 268; *People* v. *Brown,* 325 id. 307.) By its verdict the jury found that the defendant's explanation of his possession of the stolen property did not rebut the presumption of guilt, and that a fair and full consideration of all the evidence was insufficient to raise a reasonable doubt of his guilt. The law has committed to the jury the determination of the credibility of the witnesses and of the weight to be accorded to their testimony, and where the evidence is merely conflicting this court will not substitute its judgment for that of the jury. *People* v. *Manfucci,* 359 Ill. 69; *People* v. *Kubish,* 357 id. 531; *People* v. *Fortino,* 356 id. 415.

There is in this case evidence sufficient to sustain the conviction. We see no reason for disturbing it, and the judgment will be, and is therefore, affirmed.

*Judgment affirmed.*