**People of the State of Illinois, Plaintiff-Appellee, v. Ben Florman, Defendant-Appellant.**

**Gen. No. 51,104.**

First District, Third Division.

December 1, 1966.

Rehearing denied December 19, 1966.

Jack G. Stein, of Chicago (Francis X. Riley, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James B. Zagel, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

The defendant appeals from a conviction of burglary by the court sitting without a jury. He was sentenced to the penitentiary for a term of one year to one year and a day.

The defendant contends that the court erred in finding the defendant guilty of burglary, because the evidence did not show that he entered a building, or participated in a burglary or conspired with those who did, and that the evidence did not show that the defendant was at any time in exclusive possession of the stolen goods.

The defendant, together with Abe Reeder and Joseph Sender, was indicted for the crime of burglary. The indictment charged them with knowingly entering into

the dwelling house of Mary Fudala at 4250 North Marine Drive in Chicago, without authority and with intent to commit the crime of theft, contrary to section 19-1 of the Criminal Code (Ill Rev Stats 1963, c 38, par 19-1). The defendant and Abe Reeder were tried together and were represented by separate counsel. Reeder was acquitted, and the defendant Florman was found guilty of the charge of burglary.

Mary Fudala, the victim of the burglary, testified that on September 25, 1964, she lived in apartment 2101 at 4250 Marine Drive. She knew Joseph Sender, whom she had hired to paint her apartment on three occasions. At about 6:00 or 6:30 that evening she went with Joseph Sender and her son to a restaurant. They returned about 10:30 or 11:00 o'clock p. m. She further testified that she had jewelry, valued at about $25,000, exposed in trays on the dresser, a chinchilla wrap and a mink jacket in the apartment when she left for dinner. Upon her return the trays with the jewelry, plus the fur wrap and jacket, were missing. She further testified that on October 15, 1964, she saw Joseph Sender and his wife, Shirley, on separate occasions. She had talked to Mrs. Sender several times that day on the telephone. On October 16, 1964, at about 9:00 a. m. she met Shirley Sender in Sender's apartment. Later that same day, at 8:00 p. m., they again met at the Lincoln Village, at which time Shirley gave Mrs. Fudala a key. The next morning Mrs. Fudala went to the Northwestern Station to a box where Mrs. Sender said she would find her things. She opened the box with the key and took out a plastic bag which she had purchased. The bag was stuffed with her furs and about half of the stolen jewelry. On October 19, 1964, Mrs. Sender gave Mrs. Fudala another key at the Wilson Avenue Station. Mrs. Sender took Mrs. Fudala to a locker and Mrs. Fudala opened the locker. There she found "something similar to a cigar

box in it." Nearly all of the balance of the jewelry was in the box.

Margaret Davis, a waitress at the Imperial Towers on Marine Drive, testified that while at work on September 25, 1964, in the morning, she saw Joseph Sender and the defendant Florman and Reeder sitting in a booth. She served them four coffees while they were in the restaurant that morning. She did not hear what they were saying but they remained in the restaurant for about an hour and a half talking. She testified she did not notice what anyone was wearing but she did identify Reeder as being present with Florman and Sender. She did not know the names of the people who were charged in this case excepting that of Sender.

Joseph Sender was called as a witness for the People and testified that he had been previously convicted in this matter. He testified that on October 15, 1964, he saw the defendant, Ben Florman, in the Imperial Towers restaurant; that he talked to him about painters. He also had a telephone conversation with the defendant on October 15, 1964, at which time he told Florman that his, Sender's, life was threatened and he told the defendant Florman that if he knew anybody who had any connection with the burglary he wanted "that stuff" given back to Mrs. Fudala. He also testified that the defendant Florman said he didn't know. "But if he has any information, if he has it, he'll try to get it back for me." On the afternoon of October 16, 1964, Sender met the defendant at Kimball and Bryn Mawr Avenues. He further testified that the defendant brought a package and that the defendant said, "This is it." Sender went to the Northwestern Station at Canal and Washington and put the package in a box and then told his wife, "Please, get a hold of Mrs. Fudala. Here's the stuff back." He gave the key to the locker to his wife.

Shirley Sender, the wife of Joseph Sender, testified that on October 16, 1964, her husband gave her a key.

She then got in touch with Mrs. Fudala and turned the key over to her.

Abe Reeder, was called as a witness in his own behalf. He testified that he did not burglarize the Fudala apartment and did not participate in the burglary of that apartment. He also stated that he was a partner of the defendant Florman in the B & F Construction Company, and that Joseph Sender is his brother-in-law. Shirley Sender is his sister. He also testified as follows:

"Q. Did you overhear a conversation by Mr. Florman that he had the goods?

A. Yes.

Q. When was this?

A. Sometime in October, the early part of October.

Q. During the conversation—who did Mr. Florman have the conversation with?

A. I don't know; probably a conversation came in. Our desks are very close together.

Q. You heard him talking on the phone?

A. Yes.

Q. What did you hear him say?

A. Something about jewelry. I couldn't be specific, because first of all, it wasn't in English.

Q. Well, was it in Hebrew?

A. No. It was in Yiddish.

Q. Did you understand Yiddish?

A. Very little.

Q. But you did understand enough to know that it was about jewelry, is that right?

A. I caught one or two words.

Q. Now, how did you know it was about the jewelry that was taken from Mary Fudala's apartment?

A. I didn't know."

Reeder further testified that on the afternoon of October 15, 1964, he talked to the defendant Florman at his place of business about going to get this jewelry back. He told the defendant that he had met a man whom he thought was a hoodlum, and that he had threatened Reeder. This alleged hoodlum had also threatened Florman and said that if the defendant Florman had any jewelry he wanted it back. Florman said he didn't know what they were talking about.

John J. Gallagher, Chief Investigator for the Illinois Crime Commission, testified that on October 14, 1964, he received two telephone calls. The first one was from the informer and the second was from the informer and Mr. Reeder. During the time he saw the defendant, Reeder and Ferdman, who was the informer, he impersonated a syndicate hoodlum known as Mr. "J." During his conversation with Abe Reeder he conveyed to him the fact that if something wasn't done about the return of the stolen goods he, Reeder, would be thrown in the river. He further said, "In effect, he would be killed."

During this time another representative of the Illinois Crime Commission, Mr. Walker, also impersonated a syndicate hoodlum.

The defendant argues that the evidence against him is only that Sender met the defendant, who gave Sender a package; that Sender put the package in a locker and told his wife to tell Mrs. Fudala that "the stuff is back." The locker was at the Northwestern Station and the key was given to Sender's wife, who is Reeder's sister. She, in turn, gave the key to Mrs. Fudala.

The State argues that the recent, exclusive and unexplained possession of stolen property gives rise to an

inference of guilt sufficient to sustain a conviction of burglary. People v. Owens, 23 Ill2d 534, 179 NE2d 630; People v. Pride, 16 Ill2d 82, 156 NE2d 551; People v. Malin, 372 Ill 422, 24 NE2d 349.

■ In People v. Bennett, 3 Ill2d 357, 363, 121 NE2d 595, the court said:

> "This court has often announced the rule that the possession of stolen property, the proceeds of a burglary or larceny, soon after the commission of the offense, is evidence of the guilt of the person or persons in whose possession it is found and is sufficient to warrant a conviction *unless such possession is explained* or unless there appears from all the evidence a reasonable doubt of the defendant's guilt." (Emphasis supplied.)

The defendant did not testify in this case, nor is there any evidence in the record which in any way attempts to explain his possession of the stolen goods. The defendant contends that the evidence, at most, shows that he was an accessory after the fact or receiver of stolen goods.

In People v. Francis, 362 Ill 247, 199 NE 100, the court said that a burglary can seldom be proved by direct evidence of the actual breaking and entry, and that the inference of guilt, in most cases, must necessarily be drawn from other facts satisfactorily established. In that case certain important links in the chain of the People's evidence were supplied by circumstances. In the Francis case, supra, the defendant testified and attempted to explain his possession to overcome the presumption of guilt, but failed to do so to the satisfaction of the jury.

In the instant case no effort was made to explain defendant's possession of the stolen property.

■ In People v. Pride, supra, the court held that no definite time can be fixed as to when, as a matter of law, possession is or is not recent. The defendant was seen

before the crime in the company of Sender, who was convicted of the crime. When Sender and Reeder were threatened with death unless the stolen goods were returned, they immediately called Florman. Why would they have immediately called Florman unless they knew that he had the stolen goods? When Florman was told that he also had been threatened, he promptly produced a portion of the stolen goods. We do not believe that the argument of the defendant, to the effect that the positive evidence failed to show that he entered the building and therefore could not be guilty of burglary, is well taken. Under the circumstances and inferences to be drawn, we believe that the State satisfactorily proved a case of burglary against this defendant.

The defendant also argues that under the evidence there is no showing that the defendant was in exclusive possession of stolen goods. However, the evidence positively showed that he did possess the goods, and whether he had sole possession, or whether it was shared, does not affect the inference of guilt. People v. Reynolds, 27 Ill2d 523, 190 NE2d 301.

The defendant also argues that there was some confusion as to the use of the words "box," "locker," "package" and "plastic bag." However, from reading the record there can be no question but that the defendant Florman produced a part of the stolen property, and the use of the various words above mentioned could not in any manner change the conclusion reached by the trial judge, that when Florman heard that he was threatened he immediately produced at least a portion of the stolen goods. The remainder of the goods were returned two days later as a result of the same threat against Florman. The evidence that the second key was given to Mrs. Sender by Mrs. Florman was stricken out and cannot be considered in this case, but possession of only a part of the goods does not create a reasonable doubt. People v.

Clark, 30 Ill2d 216, 195 NE2d 631. The fact that Florman responded so quickly, when he learned that he had been threatened, by returning the stolen goods is, in itself, a most incriminating fact.

Judgment affirmed.

SCHWARTZ and DEMPSEY, JJ., concur.