THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
GREGORY McNAIR, Defendant-Appellant.

First District (2nd Division)   No. 78-566

Opinion filed May 1, 1979.

James J. Doherty, Public Defender, of Chicago (Ira Churgen, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Mary Ellen Dienes, and Dale F. Weigand, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE PERLIN delivered the opinion of the court:

Following a bench trial, defendant, Gregory McNair, was convicted of burglary and unlawful use of a weapon (Ill. Rev. Stat. 1977, ch. 38, pars. 19—1, 24—1(a)(10), 24—1(b)) and was sentenced by the trial court to a single term of one to three years in the penitentiary.[1] Defendant appeals, contending that the prosecution failed to prove him guilty beyond a reasonable doubt of the aforementioned charges because the possession of proceeds from a burglary was insufficient evidence to support such conviction and because the prosecution failed to demonstrate that when arrested carrying a loaded weapon, he was not in his own abode as required by statute.

At trial, Spurag Foster testified for the prosecution and stated that some time between 8 a.m. and 5 p.m. on February 2, 1977, his apartment, located at 7753 Cornell Avenue in Chicago, was burglarized; that his clarinet, two television sets, clothing, leather coat, sheepskin coat, camera and a large jar of money were taken; that he did not give permission to defendant to enter his apartment or to remove any property therefrom; and that the locks on his apartment door were intact when he left on the morning of February 2, but that when he returned at approximately 5:30 p.m., they had been broken.

Earl Tucker also testified for the prosecution and stated that he shared the aforementioned apartment with Foster. On the date in question, he left for work at approximately 5 a.m. and returned at 7 p.m. He indicated that his 30.06 hunting rifle, a .357 revolver and a .38-caliber revolver were taken during the burglary. He further testified that televisions, watches, rings, clothes, money and other items were also stolen; that he had not given permission to the defendant to enter his

---

[1] Herbert C. Stroughter was indicted jointly with defendant for the offense of burglary. Stroughter was tried along with defendant on this charge but was found not guilty by the trial court.

apartment nor to remove any property from it; and that subsequent to the burglary he went to the police station where he identified his 30.06 rifle and .357 magnum revolver.

Police Investigator James Green testified that while completing an arrest[2] in a resident hotel, located at 1540-1550 East 64th Street, at approximately 11:15 a.m. on February 2, 1977, he and Officer Weir observed a man pointing a rifle through a partially opened door. Green identified this man as Herbert Stroughter. The police officer then drew his weapon and entered the room where he saw Stroughter drop the rifle onto a bed. At this point, Green viewed defendant drop a loaded .357 magnum revolver to the floor and also saw a woman drop a .38-caliber revolver. The two police officers radioed for assistance and placed the people in the room under arrest. Officer Weir then took the guns to the station where he inventoried them. On March 10, 1977, Tucker came to the police station and identified the 30.06 hunting rifle and the .357 magnum revolver, which had been confiscated by the two police officers, as being the same weapons taken in the burglary of his apartment.

On cross-examination, Investigator Green testified that he had asked defendant whether he lived at the apartment in which he was arrested and that defendant failed to respond that he lived there. However, Investigator Green admitted that the police reports he prepared, as well as those prepared by his fellow officer, indicated that defendant's address was 1550 East 64th Street. No items other than the guns were taken from the hotel room because at that time Investigator Green was unaware of the prior burglary of Foster's apartment. However, Green indicated that coats, televisions, and stereos were in the room when he made the arrest and that when police officers returned the following day, the room was empty.

Officer Weir was also called as a witness by the prosecution and his testimony substantially corroborated the testimony given by Investigator Green.

Co-defendant Herbert Stroughter testified that he arrived at 1550 East 64th Street at approximately 11 a.m. on the date in question. Stroughter stated that he had gone to that hotel in order to visit a woman friend, who, as it turned out, was not present. On his way out of that building, Stroughter met some police officers who informed him they were looking for a Cecil Cooper. Another individual indicated that he knew where Cooper's girlfriend lived. The police officer asked this person and Stroughter to show him the location of her address and the two men then went with this officer to another location. However, the police officer then indicated that he already knew about that location and drove them back to the hotel. After Stroughter reentered this building,

---

[2] This arrest was unrelated to the case under consideration.

defendant called Stroughter upstairs, stating to Stroughter that he had something to show him. When Stroughter entered the room, which contained several other people, defendant asked him if he wanted to buy a "piece." There was a knock at the door, and, when Stroughter opened it, there were uniformed police outside. He then shut the door and asked if they had a warrant. The police officer stated that he did not need one, and ordered Stroughter to let go of the door. After a struggle took place, Stroughter and defendant were arrested.

It was stipulated that defendant had been convicted of the felony offense of bail jumping and that he had been released from the penitentiary for that conviction on November 5, 1975. After hearing this evidence, the trial court found defendant guilty of both burglary and unlawful use of weapons.

Defendant maintains that the evidence of his possession of the proceeds from a recent burglary does not support the inference that he committed burglary beyond a reasonable doubt. We cannot agree with this contention.

■■ A burglary can seldom be proved by direct evidence of the actual breaking and entry. The inference of guilt, in most cases, must necessarily be drawn from other facts satisfactorily established. (*People v. Francis* (1935), 362 Ill. 247, 250, 199 N.E. 100.) Accordingly, it is well established that the recent, exclusive and unexplained possession of stolen property by an accused, in and of itself, gives rise to an inference of guilt which may be sufficient to sustain a conviction in the absence of other facts and circumstances which leave in the mind of the trier of fact a reasonable doubt as to his guilt. See *People v. Owens* (1962), 23 Ill. 2d 534, 537, 179 N.E.2d 630, *cert. denied* (1962), 370 U.S. 947, 8 L. Ed. 2d 812, 82 S. Ct. 1592.

■■ In the present matter, the prosecution demonstrated that Spurag Foster's apartment was burglarized some time after 8 a.m. on February 2, 1977. The testimony of the two police officers also showed that defendant was in possession of part of the proceeds taken in the aforementioned burglary at noon the same day in a room of an apartment building, located approximately 15 blocks from Foster's apartment.

Defendant did not testify in this case; nor is there any evidence in the record which in any way attempts to explain his possession of the stolen guns. Since the prosecution demonstrated that a burglary occurred, that certain items were taken, that defendant was in possession of at least some of these items when arrested and that he was in possession of these items within a very recent period of time after the burglary took place, we feel that the prosecution has sustained its burden of proving defendant guilty of burglary beyond a reasonable doubt.

It is true that Investigator Green testified that no other items, besides

the two weapons, were recovered from the apartment in which defendant was arrested. However, he did indicate that he observed clothing, coats, televisions and stereos in the room at the time of the arrest, but stated he did not attempt to recover these items because he was unaware of the burglary at that point. This court has held that "possession of only a part of the goods does not create a reasonable doubt" of guilt. *People v. Florman* (1966), 77 Ill. App. 2d 158, 165, 222 N.E.2d 191, *cert. denied* (1967), 389 U.S. 826, 19 L. Ed. 2d 82, 88 S. Ct. 73.

Defendant, nevertheless, calls attention to these facts and argues that the inference flowing from the possession of stolen property is not a substitute for evidence and that it cannot be used, consistent with due process, to circumvent the reasonable doubt standard approved in criminal trials. Defendant concedes that, prior to the present time, four hours may have been a short interval in which to dispose of a stolen gun and that wrongful possession of such weapon may have demonstrated wrongful taking. But, defendant argues that in this day and age such a presumption is naive and out of place since a gun is a highly negotiable item. For this reason, defendant asserts that the aforementioned inference is not sufficiently persuasive to sustain his burglary conviction.

However, defense counsel failed to raise this constitutional issue at trial or in his oral motion for a new trial. The general rule is that failure by defendant to raise an issue in the trial court constitutes a waiver and the issue cannot be urged as a ground for reversal on review. This waiver rule applies to constitutional as well as to other issues. (See *People v. Precup* (1978), 73 Ill. 2d 7, 16, 382 N.E.2d 227; *People v. Amerman* (1971), 50 Ill. 2d 196, 197, 279 N.E.2d 353; and *People v. Graves* (1974), 23 Ill. App. 3d 762, 765, 320 N.E.2d 95.) Since defendant failed to raise this contention at the trial level, we deem it to have been waived.

Nonetheless, we have examined the aforementioned contention and find it to be without merit. The United States Supreme Court has considered the due process limitations of criminal presumptions on several occasions, but in two cases specifically declined to rule that a presumption must satisfy the reasonable doubt standard in order to meet due process requirements. (See *Leary v. United States* (1969), 395 U.S. 6, 23 L. Ed. 2d 57, 89 S. Ct. 1532, and *Barnes v. United States* (1973), 412 U.S. 837, 37 L. Ed. 2d 380, 93 S. Ct. 2357.) In *Leary*, the court considered a challenge to a statutory inference that possession of marijuana, unless satisfactorily explained, was sufficient to prove that defendant knew that the marijuana had been illegally imported into the United States. The court concluded that in view of the significant possibility that any given marijuana was domestically grown and the improbability that a marijuana user would know whether his marijuana was of domestic or imported origin, the inference did not meet the standard set by *Tot v.*

*United States* (1943), 319 U.S. 463, 87 L. Ed. 1519, 63 S. Ct. 1241; *United States v. Gainey* (1965), 380 U.S. 63, 13 L. Ed. 2d 658, 85 S. Ct. 754; and *United States v. Romano* (1965), 382 U.S. 136, 15 L. Ed. 2d 210, 86 S. Ct. 278. Citing these three cases, the Supreme Court held that a criminal statutory presumption must be regarded as "irrational" or "arbitrary," and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend. (395 U.S. 6, 36, 23 L. Ed. 2d 57, 82, 89 S. Ct. 1532.) In a footnote, the court stated that since the challenged inference failed to satisfy the more-likely-than-not standard, it did not have to "reach the question whether a criminal presumption which passes muster when so judged must also satisfy the criminal 'reasonable doubt' standard if proof of the crime charged or an essential element thereof depends upon its use." 395 U.S. 6, 36, n. 64, 23 L. Ed. 2d 57, 82 n. 64, 89 S. Ct. 1532.

■ In the present matter, the challenged presumption permits the inference of guilt where there is an unexplained possession of recently stolen property. The evidence established that defendant possessed two weapons that were stolen from the apartment in question, approximately four hours earlier. Defendant failed to provide any plausible explanation for such possession consistent with innocence. In view of this evidence, we are of the opinion that it can be said with substantial assurance that the presumed fact of guilt is more likely than not to flow from the proved fact of the possession of the stolen weapons.

Defendant contends that he was not proved guilty beyond a reasonable doubt of unlawful use of weapons because the State failed to adequately show that he was not in his own abode when he carried the loaded revolver. (See Ill. Rev. Stat. 1977, ch. 38, par. 24—1(a)(10); *People v. Chmilenko* (1976), 44 Ill. App. 3d 1060, 1062, 358 N.E.2d 1247.) We also cannot agree with this contention.

Regarding this argument, the following testimony by Investigator Green is particularly relevant:

"Q [Defense counsel] Did you ever determine whether or not Mr. McNair lived in that apartment subsequent to this?

A All the people were asked if they lived there. None responded that they lived there.

Q Did you ever conduct any investigation to determine whether or not Mr. McNair occupied that apartment?

A He stated that he did not occupy that apartment.

Q Well, did you?

A Yes, sir.

Q You asked a general question, to all the occupants, whose room it was, and no one responded, is that correct?

A  And they were asked individually.

Q  Well, where did you ask him?

A  I believe that was at the police station, furthering the investigation."

Additionally, Investigator Green admitted that both his own police report and a report prepared by another officer indicated that defendant's address was 1550 East 64th Street, the address of the resident hotel in which he was arrested. Defendant contends that these reports evidence the fact that he lived in the apartment where the arrest took place.

■■ By virtue of its guilty finding, the trial court necessarily found that defendant was not in his own abode when arrested carrying the .357 revolver. This finding is supported by the fact that the aforementioned police reports gave defendant's address only as 1550 East 64th Street but did not indicate in which apartment within the resident hotel defendant lived. In this regard Officers Green and Weir described the hotel as a rooming house with single rooms and with a corridor running down through the middle of the building. We cannot say that the evidence was insufficient to show defendant was not in his own abode when arrested.

In a bench trial in criminal cases it is for the trial court to hear the testimony and determine the credibility of the witnesses. Where the truth lies is a matter peculiarly for the trier of fact, and it is not for a reviewing court to substitute its opinion therefor. (*People v. Williams* (1966), 75 Ill. App. 2d 50, 59, 221 N.E.2d 48.) In view of the opportunities of observation available to the trial court, a reviewing court will not disturb a guilty finding unless the proof is so unsatisfactory or implausible as to justify a reasonable doubt as to defendant's guilt. (*People v. Crenshaw* (1959), 15 Ill. 2d 458, 468, 155 N.E.2d 599, *cert. denied* (1959), 359 U.S. 997, 3 L. Ed. 2d 985, 79 S. Ct. 1133.) For the foregoing reasons, we feel that defendant was proved guilty beyond a reasonable doubt of unlawful use of a weapon.

■■ The trial court imposed only one sentence although it had entered convictions for burglary and the felony of unlawful use of a weapon against defendant. But the record is unclear as to which offense sentence was imposed. Under such circumstances, the failure to impose two sentences renders the judgment of convictions incomplete. (See *People v. Scott* (1977), 69 Ill. 2d 85, 88-89, 370 N.E.2d 540.) Accordingly, the two convictions for burglary and unlawful use of a weapon and the one sentence imposed are affirmed. However, the cause is remanded with directions to clarify the record as to which offense sentence was imposed (see *People v. Cook* (1976), 41 Ill. App. 3d 946, 354 N.E.2d 122), and that the circuit court enter a second sentence for the conviction upon which no sentence was previously imposed.

For the aforementioned reasons, the judgment of the circuit court is affirmed, but the cause is remanded with directions that the circuit court hold further proceedings consistent with the views expressed herein.

Affirmed in part and remanded with directions.

STAMOS, P. J., and HARTMAN, J., concur.